Edward R. Schafer, as Administrator of Franz Schafer, Deceased, Appellant, *v.* The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

1. Municipal Corporations — Liability for Condition of Street. If a city suffers the public to treat land in a laid out and partially improved, but not formally opened, street as an ordinary street, it is bound to keep it in a reasonably safe condition.

2. Obstruction in Street — Negligence. Leaving a water-main manhole, with a cover projecting for several inches above the surface, in the middle of a traveled track which the city is bound to keep in a reasonably safe condition as a street, constitutes an obstruction which will raise a question of fact as to the negligence of the city in case a traveler is injured thereby.

3. Contributory Negligence. When, in an action for damages for a death caused by the negligence of another, there is some evidence showing the exercise of reasonable care by the decedent, the fact that, owing to the circumstances, the evidence of care is weak, does not justify taking the question of contributory negligence from the jury.

4. Death Caused by Driving against Obstruction in Street — Evidence of Care. In an action to recover from the city of New York damages for a death caused by the collision of the wagon driven by the decedent with a projecting manhole cover in the middle of the traveled track in an unpaved street, the evidence showed that just before striking the manhole cover, the decedent had been thrown from his seat on to the pole, in crossing the curb of an intersecting avenue, which, as partially worn down by travel, formed a part of the beaten track, about twenty feet from the manhole and very near an elevated railroad column; that in passing over the curb he was seen to get a better hold on the lines and to be in control of his horses; and that in the interval before striking the manhole cover he was balancing on the pole and struggling to keep on the wagon. *Held*, that while the evidence of care on the part of the decedent was weak, it called for a submission of the question of contributory negligence to the jury, as the jury could have found that, situated as he was, the peculiar circumstances surrounding him relieved the decedent from the exercise of greater care.

*Schafer* v. *Mayor*, 12 App. Div. 384, reversed.

(Argued November 29, 1897; decided December 7, 1897.)

Appeal from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 30, 1896, affirming a judgment entered upon a nonsuit granted at Trial Term.

This action was brought to recover damages for the death of plaintiff's intestate, alleged to have been caused by the negligence of the defendant.

The facts, so far as material, are stated in the opinion.

*Maurice Untermyer* for appellant.  The circumstances of the accident and the actions of the deceased, as described by the witnesses, not only tend to show the absence of contributory negligence on his part, but there is direct evidence that he exercised due care; therefore, the case should have been submitted to the jury.  (*Chisholm* v. *State*, 141 N. Y. 246; *Pettengill* v. *City of Yonkers*, 116 N. Y. 558; *Hart* v. *H. R. B. Co.*, 80 N. Y. 622; *Miller* v. *N. Y. C. & H. R. R. R. Co.*, 82 Hun, 164; *Johnson* v. *H. R. R. R. Co.*, 20 N. Y. 65; *Galvin* v. *Mayor, etc.*, 112 N. Y. 223; *Rodrian* v. *N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 526; *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 419; *Massoth* v. *D. & H. C. Co.*, 64 N. Y. 524; *Bassett* v. *Fish*, 75 N. Y. 303.)  The acceptance and use by the public of a street constitutes it a public street so far as the duty of the city to keep it in safe condition is concerned, and the city having allowed such use without dissent is estopped to deny that it was a public street.  It is a question of fact for the jury to determine whether there was such use of One Hundred and Twenty-seventh street east of Second avenue.  (*Phelps* v. *City of Mankato*, 23 Minn. 276; *Sewell* v. *City of Cohoes*, 75 N. Y. 45; *Gallagher* v. *City of St. Paul*, 28 Fed. Rep. 305; *City of Cohoes* v. *Morrison*, 42 Hun, 216; *Requa* v. *City of Rochester*, 45 N. Y. 129.)  The city, by putting the manhole in the street and having the street patrolled by the police, assumed authority to control the land as a street, and it is liable for the injuries resulting from its negligence in not keeping it safe.  (*Mayor, etc.*, v. *Sheffield*, 4 Wall. 189; *Sewell* v. *City of Cohoes*, 75 N. Y. 45.)  The city is bound to keep its public streets in a reasonably safe condition for travel, and should not invite the public to use them before it has placed them in that condition.  (*Byrne* v. *City of Syracuse*, 79 Hun, 555; *Taft* v. *City of Troy*, 18

Wkly. Dig. 478; *Sewell* v. *City of Cohoes*, 75 N. Y. 45; *Weed* v. *Vil. of Ballston Spa*, 76 N. Y. 329; *Saulsbury* v. *Vil. of Ithaca*, 94 N. Y. 27; *Turner* v. *City of Newburgh*, 109 N. Y. 301.) The trial court erred in holding that the city was guilty of no negligence in maintaining the manhole in the manner that it did. (L. 1881, ch. 105.) If it should be decided that One Hundred and Twenty-seventh street, where the accident occurred, was not a public street, the city should still be held liable for the damages resulting from its act in placing the manhole at a dangerous elevation in a traveled path over which the city had no control. (*Clifford* v. *Dam*, 81 N. Y. 52.) The city had sufficient notice of the dangerous condition of the street. The continued existence of the manhole in the condition in which it was at the time of the accident and the fact that it was placed there by the city is sufficient to establish constructive notice to the city of its condition. (*Wilson* v. *City of Troy*, 135 N. Y. 96; *Walsh* v. *Mayor, etc.*, 107 N. Y. 220; *Turner* v. *City of Newburgh*, 109 N. Y. 301; *Brusso* v. *City of Buffalo*, 90 N. Y. 679; *Russell* v. *Village of Canastota*, 98 N. Y. 496; *Nelson* v. *Village of Canisteo*, 100 N. Y. 89; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 273; *Barnes* v. *District of Columbia*, 91 U. S. 540; *Barton* v. *City of Syracuse*, 36 N. Y. 54; *Kunz* v. *City of Troy*, 104 N. Y. 344.)

*Theodore Conoly* for respondent. There is no evidence of negligence on the part of the defendant in maintaining the manhole. (*Urquhart* v. *City of Ogdensburg*, 91 N. Y. 67; *Hines* v. *City of Lockport*, 50 N. Y. 236; *Mills* v. *City of Brooklyn*, 32 N. Y. 489; *Monk* v. *Town of New Utrecht*, 104 N. Y. 552; *Ring* v. *City of Cohoes*, 77 N. Y. 83; *Dubois* v. *City of Kingston*, 102 N. Y. 219; *Macomber* v. *Taunton*, 100 Mass. 255; *Todd* v. *City of Troy*, 61 N. Y. 506; *Kunz* v. *City of Troy*, 104 N. Y. 344; *Masterton* v. *Vil. of Mount Vernon*, 58 N. Y. 391.) There is no evidence that the plaintiff was free from contributory negligence. (*Tolman* v. *S., B. & N. Y. R. R. Co.*, 98 N. Y. 198; *Rodrian* v. *N.*

*Y., N. H. & H. R. R. Co.*, 125 N. Y. 526; *Wiwirowski* v.
*L. S. & M. S. R. Co.*, 124 N. Y. 420; *Warner* v. *N. Y. C.
R. R. Co.*, 44 N. Y. 465; *McDonald* v. *L. I. R. R. Co.*, 116
N. Y. 546; *Weston* v. *City of Troy*, 139 N. Y. 281.) The
evidence requires the conclusion that the deceased was guilty
of contributory negligence. (*Robinson* v. *M. R. Co.*, 5 Misc.
Rep. 209; *Roe* v. *Crimmins*, 10 Misc. Rep. 711.)

VANN, J. The scene of the accident which gave rise to
this controversy was a point in the city of New York where
127th street, running substantially east and west, crosses at
right angles Second avenue, which runs nearly north and
south. At this place, in September, 1894, an elevated rail-
road ran through the avenue supported by iron columns,
two of which stood in the central line of the street and two
more on the line of the crosswalk on the easterly side of the
avenue as it crosses the street. From the avenue toward the
east the street had not been graded, paved or lighted, but as
early as 1881 the legislature had made it the duty of the city
to open it as a street (L. 1881, ch. 105); and, although never
formally opened, a sewer had been constructed in it by the city;
it was patrolled by policemen and it had been used by the public
as a street for many years. The witnesses described it as a
thoroughfare and evidence was given tending to show that from
thirty to one hundred vehicles of different kinds passed over it
every day. In 1887 the city laid a water main through this
part of the street and left the cover of a manhole projecting
about five inches above the surface of the ground, apparently in
anticipation of paving the street at some time, when the top of
the projection would become level with the pavement. The
cover was a circular iron box about eighteen inches in diam-
eter. The manhole, covered in this way, was in the center of
the street as bounded by the lots and buildings on either side,
and was about in the easterly line of the easterly crosswalk of
the avenue and a few feet southeasterly of one of the iron
columns. There were two traveled ways in the street as it
crossed the avenue, each about fifteen feet wide, one on either

side of the iron columns that stood in the central line of the street.

At about six o'clock in the afternoon of Sunday, September second, 1894, the plaintiff's intestate, a healthy man about twenty-eight years old and weighing two hundred pounds, was driving a large truck, heavily loaded with kegs of beer and drawn by two powerful horses, with the intention of delivering some beer at Sulzer's Park, a place of resort on the south side of 127th street and directly east of the avenue. He drove southerly on the westerly side of Second avenue toward 127th street, and when near the latter stopped, and his helper alighted to go across and open the gate of the park. The deceased then turned his team to the east and drove in the traveled way on the north side of the street. Directly before him then was the curb on the easterly side of the avenue which projected several inches above the surface of the street and the grade from the curb to the east was upward at an angle of between four and five degrees. The traveled way was directly across the curb, and it was necessary to drive over it. A little to his left after crossing the curb stood one of the iron columns, and almost in front of him, about twenty feet easterly from the curb, was the manhole in question. He started his horses at a quick trot, apparently to get enough momentum to carry his heavy load over the curb and up the incline beyond. Evidence was given tending to show that as he crossed the curb he was bounced upward from his seat, which was eight or ten feet from the ground, and that he then fell forward on to the pole and, when the left wheel forward struck the cover of the manhole, he was thrown to the ground, one of the wheels passed over him, and he died almost instantly. His body was found at a point about twenty feet easterly from the manhole, and when the horses stopped, the rear of the truck was not far from the manhole. One witness said that "the hind wheels were straight with the manhole, and the other wheels were toward the other way," apparently meaning toward the south. Another witness testified that when the front wheels struck the curb the decedent

was jounced and lost his balance. He reached forward and got a tighter grip on his lines at the time he was jounced. He fell forward on to the pole, and when the left front wheel hit the manhole he fell to the ground and the wagon passed over him. " He had not lost control of the horses at the time. I suppose he tried to get a tighter hold so that he could not catch the manhole — so that he could get away out of the manhole." When the plaintiff rested the trial judge dismissed the complaint upon the ground that no negligence had been shown on the part of the city, and that, as the decedent must have seen the manhole when he approached it, he was to be deemed negligent in driving against the cover. The Appellate Division, by a divided vote, affirmed the judgment entered upon the nonsuit, and the plaintiff appealed to this court.

We agree with the learned Appellate Division that it was a question for the jury to decide whether the use of the locality as a street was permitted by the city; that if the city suffered the public to treat the land as an ordinary street it was bound to keep it in a reasonably safe condition, and that leaving a manhole with a cover projecting for several inches above the surface of the ground nearly in the middle of the street was an obstruction to travel which presented a question of fact for the jury as to the negligence of the defendant.

The critical point in the case is the question of contributory negligence, upon which the learned judges of the court below were divided in opinion. Just what the decedent did or tried to do during the few seconds that preceded his death can never be known, as he died without telling his story. The plaintiff, his legal representative, apparently called every witness who could throw any light upon the subject, and from their evidence it was clear that the manhole was plainly visible directly in front of the intestate as he was driving toward it. The jury might have found that he was not familiar with the locality, as he was not a regular driver of the truck, and he does not appear to have ever been there

before.　Can it be said, as a matter of law, that under the circumstances he saw or should have seen the manhole and avoided it?　His truck was long, heavy and unwieldy, and could not easily be turned in a short space, so that the curve that he had to make in order to reach his destination presented a somewhat difficult task in driving, as the iron column and the manhole were to be avoided, and he had to go rapidly so as to get over the curb with his load.　The jouncing caused by passing over the curb threw him forward on to the pole, as the jury might have found, and prevented him from guiding his horses and from seeing just where they were going at the moment.　When the fore wheels of the wagon had advanced twenty feet farther, while he was in this situation, the jolt, caused by striking the cover of the manhole, threw him under the wheels and he was killed.　No observer states that he was paying attention to anything except his business of driving.　He was seen to lean forward to get a better hold of the lines, which, in the language of one of the witnesses, "all good drivers do," and this indicated that he was paying attention to the business in hand.　If he had survived the accident, it would have been necessary for him, in order to meet the burden of proof, to state what he did and what he tried to do fully and explicitly; but, as he is dead, less evidence is required of his personal representative.　(*Rodrian* v. *N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 526; *Fitzgerald* v. *N. Y. C. & H. R. R. R. Co.*, 154 N. Y. 263.)　The plaintiff's intestate was bound to exercise reasonable care; but if, owing to the circumstances, the evidence of care was weak, it does not follow that it was not for the consideration of the jury.　If there was any evidence upon the subject, the case should have been submitted to them for decision.　There was evidence tending to excuse the decedent for not seeing the manhole after he fell forward, but there was no evidence of care on his part except the fact that he got a better grip on his lines, and that he had not lost control of his horses.　While striking the manhole caused the accident, jouncing over the curb placed him in a position of danger and naturally prevented him from

seeing, thinking or acting as he ordinarily would. The height of the curb, which was variously stated by the witnesses at from two and one-half to eight inches, made it necessary for him, if he crossed at all with so heavy a load, to go fast enough so that the momentum would carry him over, as otherwise the wheels would have become blocked. The curb was a part of the beaten track over which all vehicles passing that way were accustomed to go, so that the original height of the curb had been reduced by the passing of many wheels by several inches. Under these circumstances we think that he was not bound to go back, even if there was room to turn around, and not discharge his duty of delivering beer at Sulzer's Park, and that the jury might have found that he was not negligent, situated as he was, in driving over it as he did. Why should he not have crossed, since, in legal effect, the defendant, impersonated, stood there inviting him to? As he was passing over it he was seen to exercise some care in getting a better hold of the lines and in still retaining control of his horses. After he had passed over he was unexpectedly thrown into a situation of danger that would naturally cause some mental confusion. The horses were still going rapidly up the incline and had but twenty feet farther to go before the forward wheel struck the manhole. During the mere instant of time required to go that short distance he was balancing on the pole and struggling to keep on the wagon. If he had retained his seat so that he could have seen the manhole it would have been his duty to make due effort to avoid it, but situated as he was the jury could have found that the peculiar circumstances surrounding him relieved him from the exercise of greater care. While the question is so close as to invite difference of opinion, we think that the case should have been submitted to the jury.

The judgment should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur, except Andrews, Ch. J., Gray and Haight, JJ., dissenting.

Judgment reversed.