ALICE A. DAVIS, Respondent, *v.* SUPREME LODGE, KNIGHTS OF HONOR, Appellant.

*Life insurance — untrue statement in an application therefor — the testimony of an attending physician of an aunt of the insured as to the cause of her death — waiver by the insured, in his application, of the benefits of section 834, Code of Civil Procedure — records of the board of health as evidence.*

The falsity of a statement made by the insured, on procuring an insurance policy, that neither of the parents of the insured nor any of the paternal or maternal grandparents nor any of their descendants, *so far as known*, had died of consumption, does not constitute a breach of warranty unless the fact that a relative within the degree named had so died was known to the insured at the time when he made the statement.

On the trial of an action brought to recover upon such an insurance policy, the testimony of a physician, who attended an aunt of the insured in her last illness, concerning the disease from which the aunt suffered, is inadmissible under section 834 of the Code of Civil Procedure.

The waiver by the insured, in his application for membership in the insurance company, of the benefits of that section of the Code of Civil Procedure, does not render such testimony competent, as such a waiver was personal to the insured and could not operate upon any one else.

Records of the board of health, offered for the purpose of establishing the cause of the death of the insured's aunt, are not admissible, as, in so far as they con-

tain declarations of the attending physician, they fall under the ban of the statute and as such records are not competent evidence between private parties as to the cause of death; nor are they made so by section 1172 of the Greater New York charter (Laws of 1897, chap. 378).

APPEAL by the defendant, Supreme Lodge, Knights of Honor, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 7th day of April, 1898, upon the verdict of a jury, and also from an order bearing date the 6th day of April, 1898, and entered in said clerk's office denying the defendant's motion for a new trial made upon the minutes.

*W. R. Spooner,* for the appellant.

*Herbert A. Heyn,* for the respondent.

HATCH, J.:

The purpose of this action is to recover the sum of $2,000, secured to be paid by a benefit certificate issued by the defendant. The issue tendered by the answer was a breach of warranty by the insured in making untrue answers in his petition for membership in the defendant and in his answers given to the physician upon his medical examination. It is not contended but that the answers given by the insured in order to procure the issuance of the certificate constituted a warranty of the truth of all material statements therein; and if the same be false in a material particular it avoids the contract of insurance. The defendant having averred a breach of the warranty, the burden is upon it to affirmatively establish such breach. (*Spencer* v. *Citizens' Mut. Life Ins. Assn.,* 142 N. Y. 505; *Dougherty* v. *Met. Life Ins. Co.,* 3 App. Div. 313.) The particulars in which a breach of warranty is averred consist in a claimed false statement that the insured had not been attended by a physician or consulted one since January, 1895; that he made a good recovery from the grippe which he had in that year; that he was in good health down to the date of his initiation into the lodge of the defendant on June 4, 1895, and had been prior thereto; that neither of the parents of the insured nor any of the paternal or maternal grandparents nor any of their descendants, so far as known, had died of consumption.

So far as the last of these claimed misrepresentations is concerned,

it is clear that the fact of a relative or a descendant therefrom within the degree named dying of consumption is not conclusive in determining the character of the representation. Such fact must have been known to the insured when he gave the answer, else it would not constitute a breach. He did not assume nor was he asked to state that none of those relatives had died of the diseases or any of them therein named. The question simply called for his knowledge, and when he answered truthfully in that respect he committed no breach of the contract, even though the fact was otherwise. (*Mayer* v. *Equitable R. F. L. Assn.*, 49 Hun, 336; *Dilleber* v. *Home Life Ins. Co.*, 69 N. Y. 256.) The only evidence bearing upon this subject is found in the proofs of death, wherein Dr. Silberman, the attending physician at the time of death, states that the remote cause of death was "Tuberculosis," and the immediate cause "Phthisis Pulmonalis & Heart Failure." The physician further states that the tendency of the insured to have the disease which caused his death was "Hereditary." Giving to this statement its full force, it must fail, for two reasons. It in no wise appears that the disease which caused death afflicted any of the relatives named in the question which the insured answered when he made his application. It might be hereditary, and yet be from a more remote ancestor than is embraced in the question. But if it be assumed it was an ancestor or descendant embraced in the question, it by no means follows that the insured had knowledge of such fact, which, as we have seen, is the essential thing to be established before it can be affirmed that there was any breach in this respect. It was sought to establish the breach in this regard by showing that two aunts of the deceased had died of consumption prior to the issuance of the certificate. For this purpose Dr. Bodkin, a physician who attended one of the aunts in her last illness, was called as a witness and asked the cause of her death, and also whether or not she had suffered from consumption. This testimony was objected to as privileged and inadmissible under section 834 of the Code of Civil Procedure. To the court the witness answered that he knew nothing of the disease from which the aunt suffered except as he learned it while attending her professionally. The court thereupon excluded the testimony. A similar fate attended upon an attempt to show by Dr. Silberman of what disease the other aunt died. This ruling was

proper. (*Grattan* v. *Met. Life Ins. Co.*, 80 N. Y. 281; *Grossman* v. *Supreme Lodge*, 6 N. Y. Supp. 821.) The waiver by the insured of this disability in his petition for membership in the defendant, did not make such testimony competent, assuming, without deciding, that such waiver was broad enough in terms to embrace the testimony which was offered. The waiver was personal to the insured, and could not operate beyond him, as he had no power to impose such condition upon any one else. The statute protects the patient, and the seal of secrecy can only be removed by him (*Buffalo Loan, etc., Co.* v. *Knights, etc., Assn.*, 126 N. Y. 450), or by the personal representatives. (Code Civ. Proc. § 836.) When the evidence falls within the purview of the statute, it is not admissible, and any person in interest or any party to the action may make the objection. (*Westover* v. *Ætna Life Ins. Co.*, 99 N. Y. 56.)

The records of the board of health, offered for the purpose of establishing the same fact, were properly excluded. In so far as they contained declarations of the attending physician, they fell under the ban of the statute. The written declaration of a physician as to the cause of death is no more permissible than is his sworn statement, if such testimony was otherwise competent. The certificates are not competent as evidence between private parties as to the cause of death. (*Buffalo Loan, etc., Co.* v. *Knights, etc., Assn., supra.*) Nor do the provisions of the charter (Chap. 378, Laws of 1897, § 1172) change this rule. (*McKinley* v. *Met. Life Ins. Co.*, 58 N. Y. St. Repr. 122.)

As to the other questions the defendant relies on the testimony of Dr. Silberman, who testified that he attended the insured in January, 1895. He did not again treat him prior to the illness which resulted in his death. The witness testified that he examined the insured once between January, 1895, and his last illness. The date of this examination was quite important, as it was near to the time when the insurance was effected, and when the medical examination therefor was had by the physician of the defendant, and, therefore, bore directly upon the claimed breach of warranty. He thought the examination was in April; would not swear that it was not in May, but did swear positively that it was not in June. The meeting at which the examination was had, according to the witness, was accidental; the insured did not go to consult him, but for

some other purpose which the witness did not recollect. The insured did not ask to be examined, but the doctor examined him of his own accord, after asking him how he felt and receiving the reply that he did not feel quite well. The doctor stated that he tested his lungs by percussion and auscultation ; found dullness on percussion ; he had a cough, shortness of breath and an accelerated pulse. Based upon this examination the witness was of opinion that the insured was in the early stages of consumption. The witness did not regard this a consultation ; he made no record and no charge, although in his prior attendance upon him he had done both ; and he did not inform the insured of the results of his examination. The witness further testified that the insured did not make a good recovery from the grippe ; that it left him with a cough, weakness, shortness of breath, general anemia. On redirect examination the witness amplified somewhat upon his former testimony as to the physical condition of the insured, stating : " He had a cough, with exaggerated respiration or hurried breathing, complained of weakness, lost flesh, and the evidences in the lungs themselves indicated incipient phthisis, dullness in percussion and listening to the lungs on auscultation showed signs of the beginning of inflammation."

The petition for membership was dated December 19, 1894, the medical examination was had on the 17th day of May, 1895, and the certificate bore date July 10, 1895. The petition stated that the applicant was in sound bodily health, and his medical examination by the defendant's physician tended to confirm it. The examining physician of the defendant, in answer to the question that he was required to certify, shows that when he examined the rate of pulse of the insured it was seventy-two, was not intermittent, irregular or unsteady ; that his respiration was full, easy and regular, and the murmur clear and distinct over both lungs ; that there was an entire absence of indications of disease of the organs of respiration or their appendages ; that the heart's action was uniform, full and regular ; that he made careful auscultation and percussion of the thorax ; that he considered the applicant to be habitually free from tendency to cough, difficulty of breathing and palpitation of the heart. This doctor considered the applicant a first-class risk, and recommended him for membership in the order. The doctor was also examined as a witness upon the trial, and verified his examination. He also stated that

a very essential part of his examination was the lungs; that he made a careful examination and did not find anything the matter with the applicant's lungs; that in his opinion he did not have incipient consumption. On cross-examination he stated that, in the earlier stages of consumption, the condition of the individual is materially better on some days than it is upon others, dependent somewhat upon the condition of the weather. It is quite evident that the testimony of these physicians cannot stand together except in the view that the examination of Silberman was made after the examination by Thompson, and perhaps this view is permissible. The examination by the former may have been made any time in May, and force be given to his testimony, as the date of his last examination may have been any time in that month; while the latter was upon the seventeenth of that month, and is a certain date. It seems somewhat improbable that the conditions could have existed as found by Silberman, if he made his examination in April, and no trace of them exist upon the seventeenth day of May following, even though the condition be better on one day than another, as there seem to have been plain symptoms; and equally so that the insured should have been in sound bodily health on the latter date, and developed incipient consumption, with the attendant symptoms as described, fourteen days thereafter. However this may be, it is sufficient now to say that the question of reconciliation, if that were possible, was for the jury. In any event, Silberman's testimony was not conclusive; it was subject to scrutiny by the jury. He made no mention of his examination in April or May in the proofs of death, although the questions he was there required to answer fairly required it. He stated that there was not a good recovery from the grippe, but in this he was disputed by the insured and also by the examination and testimony of Thompson; and this applies as well to the later statements made by the insured just prior to the issuance of the certificate. In any view the question was for the jury, and their finding is conclusive. (*Bradley* v. *John Hancock Mut. Life Ins. Co.*, 20 App. Div. 22.)

The judgment should, therefore, be affirmed, with costs.

All concurred.

Judgment and order affirmed, with costs.