CHOLET, Respondent, v. CITY OF SYRACUSE, Appellant. (Supreme Court, Appellate Division, Fourth Department. January 3, 1906.) Action by Minnie Cholet against the city of Syracuse.

PER CURIAM. Judgment and order reversed, and new trial ordered, with costs to the appellant to abide event upon questions of law only; the facts having been examined and no error found therein. Held, that as matter of law the evidence failed to establish actionable negligence on the part of defendant or freedom from contributory negligence on the part of the deceased.

HISCOCK, J. I dissent. This action was brought to recover damages for the death of plaintiff's intestate and husband alleged to have been caused by the negligence of the defendant. Said intestate was found dead at the bottom of an elevator shaft in the city hall owned and occupied by the defendant. Nobody saw the accident. It is claimed by the plaintiff that while employed by the defendant for the purpose of repairing the elevator running in said shaft he attempted to enter said elevator, and that the latter, without his knowledge, having been moved from the floor where he had left it, he was precipitated into the shaft and killed. Under her notice of claim and under the instructions given by the learned trial justice to the jury, the plaintiff is limited to the sole complaint that defendant was negligent in not furnishing such sufficient light in and around the elevator and elevator shaft as would have enabled intestate to discover that the elevator had been moved. While the evidence is meager at certain points, I still think that it furnished a sufficient basis to permit and sustain the verdict of the jury, and that the judgment should be affirmed. The jury were entitled amongst others to find the following facts as existing at and before the time of the accident: The defendant maintained a building known as its city hall which in part was occupied by various municipal offices and departments. This building was three or more stories in height. Its length ran in a general northerly and southerly direction. The basement floor, with which we are specially concerned, was traversed in its center from north to south by a long hall. This hall was intersected by another one running from Market street upon the easterly side to Montgomery street upon the westerly side. The elevator shaft in question was located a few feet from the southeasterly corner of this intersection. In this shaft moved an elevator whose construction requires no particular attention and in front of the elevator opening upon each floor was a grill ironwork and sliding door with a catch, which, when in order, could not be opened from the outside of the shaft except with a key. Three lights were located in the long hall above mentioned, one at each end, and one at the intersection formed by the side hall. These lights were in the ceiling, and in each case consisted of a cluster of three incandescent lights inclosed in a large clouded or frosted globe 15 inches in diameter and 11 feet and 6 inches from the floor. The hall received no

daylight except a small amount which came in from the side entrances above mentioned, and both of which were a good many feet from the elevator shaft. In accordance with instructions given by those in authority the lights at the respective ends of the hall were not kept burning, and the light in the elevator was extinguished when the latter was not in use, and at the time of the accident had been so extinguished. It was difficult for a person accustomed thereto to see whether the elevator was or was not at this floor; the only method, as stated by certain witnesses, being to catch a glimpse of or reflection from some glasses around the top of the elevator car. "It was dim there; it was dimly lighted." The latch upon the door leading into the elevator shaft, at least upon the floor in question, for a considerable time had been so out of repair that it could be worked and the door opened from the outside without a key; and likewise for a considerable time, with the knowledge of the city officials in charge, people in and about said city hall had been accustomed to so work said latch without a key, open the door to, and use the elevator when the same had been left by the boy in charge thereof and was not supposed to be in use. Intestate's main and regular employment was in the water department of the defendant, which was located in a building several blocks distant from the city hall. But he was a machinist and was specially employed to look after repairs to the elevators at the city hall, coming there for that purpose each morning from 7 to 8 and upon a few occasions at other hours during the day. These duties included taking charge of the elevators and keeping them in repair, oiling them, etc., but nothing was said to him about the doors already mentioned. He had been thus engaged for a year and a half before the accident, but was not at the building or in and around the elevators during the day after 8 o'clock in the morning, unless specially sent for. Upon the day in question, there being trouble with the elevator where the accident happened, the boy in charge thereof, in accordance with directions of a superior, went after intestate for the purpose of having him make repairs. The latter came to the city hall, but shortly thereafter went back to the water office where were necessary tools and supplies, and then again almost immediately returned to the city hall. After his last return he was running the elevator, when a witness named McKeever met him at the third floor of the building and rode down in the elevator with him to the basement floor. The elevator was then still out of repair. The deceased, having closed and fastened the door leading into the shaft, with McKeever went to a storeroom at the south end of the long hall already mentioned upon the basement floor to find some necessary article. McKeever left the deceased in that room, passed through the hall by the elevator, and out of the building by the side Market street entrance already mentioned. As he went out of the building some person, whether an employé of the city or not does not appear, came out of an adjoining room, opened the elevator door, and set the elevator in motion for an upper story; the elevator door being left closed as before. As this witness was in the middle of Market street only about 50 feet distant from the elevator, Sparks, who had charge of the elevator, was coming across from the opposite side of the street to enter the city hall pursuant to his agreement with intestate to assist in repairing the elevator. Sparks went directly to the elevator and found the elevator door wide open; the elevator itself being upon the floor above. He called loudly down the elevator shaft to Cholet, looked out and around the Montgomery street entrance, and went through the building from the cellar to the third floor calling loudly for intestate and making inquiry for him, but did not obtain any response or find him. This was in the afternoon, and Sparks soon thereafter left for the day, and, so far as appears, no further effort was made to find the intestate or which might naturally have led to the discovery of his body. The next morning at 8 o'clock two of intestate's daughters were at the city hall looking for their father, and soon thereafter a search was made which resulted in discovering the body at the bottom of the shaft, face downward, head northeast, with the neck broken and the body cold.

The inferences which the jury evidently drew from these facts were that, after Cholet came from the room where he was with the witness McKeever looking for paper, he returned to the elevator which he was engaged in repairing; that he opened the door expecting to find and enter the elevator where he left it; that, owing to the defects in the latch and the custom which people had of entering and using the elevator when not managed by the boy in charge thereof, said elevator had been moved from the place where it was left; that as a result of the darkness Cholet did not discover this and stepped into the open shaft, falling and receiving injuries which caused his death. It is strenuously urged by the learned counsel for the appellant that these are not legal or legitimate inferences, but are simply speculations unsustained by any sufficient proof; that other speculations might as well be adopted, as, for instance, that the deceased opened the door, found the elevator gone, reached for the rope to pull it back, and lost his balance, falling into the well. As must be conceded, the evidence is not abundant or direct by which it may be demonstrated that the accident occurred in the manner claimed by the plaintiff. But that is a condition which is liable to confront the court in the decision of every case where an accident has occurred without eyewitnesses, and it is well settled that in such a case plaintiff may establish his cause of action by proof of surrounding facts and circumstances, though they appear somewhat remote and inconclusive, provided only they authorize the necessary inferences. Applying such rule to this case, it seems to me that the jury were permitted to find as they did upon the evidence which was adduced. The intestate had been called specially to repair this elevator. He had already entered the elevator for the purpose of performing this duty, and had brought it to the basement floor, where he had left it stationary and with the door locked for the temporary purpose of procuring some supply and manifestly with the intention, in accordance with the duty and instructions which had been imposed upon

him, of returning again to the elevator. That was his only duty in the building, and he was never afterwards seen or heard of anywhere, except at the elevator shaft. The natural thing for him to do was to return, open the door, and step into the elevator car where he had left it. And the open door which Sparks discovered a few moments afterwards, and the subsequent discovery of intestate's body at the bottom of the shaft, warrant and sustain the theory that he did open the door and so attempt to enter the elevator in accordance with his employment, and that owing to the movement of the elevator by some unauthorized person away from the floor he met with the accident. If the hall or the elevator had been reasonably well lighted he would have discovered that the car was not there, and the accident would have been avoided. The lack of light was attributable to the defendant and its officers. It was chargeable with knowledge of the fact that the catch was defective so that the door could be opened without a key, and that people were accustomed to so open it and use the elevator without authority. It knew these things when it summoned the intestate and placed him at work upon and around the elevator and shaft. While there was some evidence upon the part of one of the defendant's employés that the intestate knew of these things, it was still permissible for the jury, under the instructions of the trial judge, to find that he did not know of them. If he did not know of them, then, in my opinion, the jury had a right to say that the defendant, knowing of the manner in which the elevator was used, was guilty of negligence in not furnishing such light around the elevator as would have enabled intestate to discover that the car had been removed, just as defendant could have apprehended that it might be removed. Jones v. N. Y. C. & H. R. R. Co., 28 Hun, 364 (affirmed by Court of Appeals without opinion); Fordham v. Gouverneur Village, 160 N. Y. 541, 55 N. E. 290; Hart, Ad., v. Hudson River Bridge Co., 80 N. Y. 622. The case seems to us clearly distinguishable from that especially relied upon of Bond v. Smith et al., 113 N. Y. 378, 21 N. E. 128.

Passing by the question of defendant's negligence as a direct cause of intestate's fall and death, defendant's counsel argues the companion one of intestate's freedom from contributory negligence, strenuously insisting that plaintiff has not established in her favor that essential proposition. Here again we are to apply to the decision of this contention rules which are reasonable and which are adapted to the inherent conditions of the case. We cannot know from the injured party what he did before meeting with his accident, or even what motives, intentions, and beliefs governed such conduct. Neither is there any other person who can describe even partially what occurred just before the intestate fell, and plaintiff's only recourse is to establish surrounding facts and circumstances from which a jury may properly infer that the deceased exercised reasonable care. As was said in Tolman v. Syracuse. Binghamton & N. Y. R. R. Co., 98 N. Y. 198–203, 50 Am. Rep. 649: "If, in such case, the surrounding facts and circumstances reasonably indicate or tend to establish that the accident might have occurred without negligence of the deceased, that inference becomes possible, in addition to that which involves a careless or willful disregard of personal safety, and so a question of fact may arise to be solved by a jury and require a choice between possible, but divergent, inferences." And again, in Schafer v. The Mayor, 154 N. Y. 466–472, 48 N. E. 749, 751, it was said: "The plaintiff's intestate was bound to exercise reasonable care; but if, owing to the circumstances, the evidence of care was weak, it does not follow that it was not for the consideration of the jury. If there was any evidence upon the subject, the case should have been submitted to them for decision." I think that the facts established by plaintiff's evidence in the case warranted the deduction by the jury that her intestate was not guilty of carelessness, and that the occurrence of the accident was entirely consistent with the exercise of reasonable care upon his part. If I have estimated aright the testimony given by the witnesses McKeever and Sparks, the jury might say that after finishing his errand in the room at the end of the hall the intestate shortly returned to the elevator for the purpose of taking charge of it and completing his repairs. He had left it a few moments before at the landing with the door permitting approach to it closed and locked. He had no knowledge of the defect in this lock, or that any person was liable to come along and move the elevator away to some other place. As he unlocked and opened the door he had a right to assume that the elevator would be where he had left it, and that he might safely step from the landing into it. Under such circumstances it was not incumbent upon plaintiff to show by her evidence that the intestate, after having opened the door, looked to see if the elevator was there before attempting to step into it. Elevators do not of themselves move away, and he had no knowledge that some human agency was liable to be applied to it to that end. The jury could say that he had a right to believe that the conditions which he had left a few moments before would continue, and if they had continued he would not have met with his accident. Neither can it be said as a matter of law that in the dim light surrounding the elevator shaft the intestate ought to have seen that the elevator was gone. It could be fairly said upon all the evidence that a person approaching, as the intestate did, and allowed to assume that the elevator was there, might reasonably step into the shaft before discovering its absence, and that he would not be guilty of negligence in so doing. It is called to our attention that the witness McKeever saw the elevator moving up the shaft just before it is assumed that the accident happened to intestate, and argued that therefore intestate should have noticed its absence. But a jury might say that McKeever, who apparently was quite familiar with the building, might notice the presence of the elevator in motion up the shaft. while intestate, expecting to find it stationary at the floor, would not detect its absence. So, upon this question I think that plaintiff established a case for the jury within Jones v. N. Y. C. & H. R. R. R. Co., 28 Hun, 364, supra; Schafer v. Mayor, 154 N. Y. 466, 48 N. E. 749; Gal-

(110 App. Div. 893)

vin v. Mayor, 112 N. Y. 223, 19 N. E. 675; Tolman v. S. B. & N. Y. R. R. Co., 98 N. Y. 198, 50 Am. Rep. 649.

The defendant urges, as a defense superior to and independent of these questions of negligence and contributory negligence, that it maintained the city hall in the exercise of a purely governmental function, and that therefore it assumed no duty to the plaintiff, a violation of which would impose liability upon it. in this action. I cannot, however, concur in this view. Of course it is well settled that a municipal corporation may act in two capacities; one governmental, as the agent of the state in the performance of those duties which devolve primarily upon it in the exercise of its sovereign power of goverment for the common benefit of all of the people of the State; the other, municipal, in the performance of duties voluntarily assumed and exercised in respect to its local or special interests for the particular benefit and advantage of the locality and its inhabitants. Maxmilian v. Mayor, 62 N. Y. 160, 20 Am. Rep. 468; Eddy v. Village of Ellicottville, 35 App. Div. 256, 54 N. Y. Supp. 800. While acting in the former capacity it could not be made liable for an accident of the nature of that proven in this case, whereas, while acting in the latter capacity it might be made subject to the operation of those principles which have been invoked against it. While the courts in some other states may have gone to the extent of holding that the maintenance and operation of a city hall would be incidental to the discharge by a municipality of its governmental functions, no authority to that effect has been called to our attention from the decisions in this state. Without a lengthy discussion of the subject, it seems clear that the building wherein the accident happened was maintained by the defendant in whole or part for its use, convenience, and benefit in the conduct and discharge of those municipal obligations and duties imposed or assumed with respect to its special and local interests, and that therefore it may be held liable for negligence in the premises. Eddy v. Village of Ellicottville, 35 App. Div. 256, 54 N. Y. Supp. 800; Quill v. Mayor, 36 App. Div. 476, 55 N. Y. Supp. 889; Galvin v. Mayor, 112 N. Y. 223, 19 N. E. 675. Some other questions have been raised upon the appeal which it is not necessary to consider specifically. In my opinion the plaintiff produced evidence which entitled her to the verdict that was awarded by the jury, and the judgment should be affirmed.

SPRING, J., concurs in this dissent.