CATHERINE FISHER WIELAND, as Administratrix of FREDERICK G. WIELAND, Deceased, Respondent, *v.* THE PRESIDENT, MANAGERS AND COMPANY OF THE DELAWARE AND HUDSON CANAL COMPANY, Appellant.

| 167 | 19 |
| 75 AD | 605 |
| 167 | 19 |
| e 78 AD | 406 |

NEGLIGENCE — WHEN FREEDOM FROM CONTRIBUTORY NEGLIGENCE MUST BE AFFIRMATIVELY PROVED. In an action to recover damages for the death of plaintiff's intestate, alleged to have been caused by defendant's negligence, when there is neither direct nor circumstantial evidence which points either to the presence or absence of contributory negligence, the plaintiff cannot recover without some affirmative evidence to show that the decedent was not guilty of contributory negligence.

*Wieland* v. *Delaware & Hudson Canal Co.*, 42 App. Div. 627, reversed.

(Argued March 12, 1901; decided April 30, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the third judicial department, entered July 17, 1899, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term and granting a new trial.

This action arose out of the alleged negligent killing of the plaintiff's intestate at what is known as Rockerfeller's crossing, three miles in a southwesterly direction from the city of Albany. It has been twice tried. The first trial resulted in a nonsuit, and the judgment entered thereon was reversed in the Appellate Division. Upon the second trial the plaintiff was again nonsuited and the Appellate Division again reversed,

one of the justices dissenting. This appeal is taken from the order entered upon that reversal.

The deceased was a milkman. On the day of the accident, August 30th, 1897, he was returning from the city of Albany and was driving south on the Rockerfeller road. When last seen he was seated in his milk wagon, drawn by one horse. The defendant's railroad crosses this highway, running generally east and west. It has but one track at this place. The deceased was struck by the engine attached to a regular passenger train coming from the west. The crossing is, concededly, a dangerous one. There was sufficient evidence in the case to justify a submission of the question of defendant's negligence to the jury. The single question presented upon this appeal is whether there is evidence tending to show that plaintiff's intestate was free from contributory negligence. There were no eye-witnesses to the accident. The respondent relies upon proof of the circumstances surrounding the accident as evidence of the exercise of ordinary care or caution upon the part of the deceased in approaching this crossing, and claims that if the exercise of such care is not affirmatively established, the evidence at least justified the inference that the exercise of that degree of care would not have prevented the accident. The material facts and circumstances bearing upon the question of contributory negligence are briefly these: The deceased at the time of the accident was about fifty-five years of age, in full possession of his faculties and of sober and industrious habits. He was familiar with the locality, having crossed and recrossed the tracks almost daily for some time previous. It was a bright, clear day, between half-past twelve and one o'clock, noon, with but a slight wind blowing from the east. The railroad approaches the highway from the west at this point through a cut in an embankment, the sides of which are in places upwards of forty feet in height. The north side or bank of this cut, which is the side from which the deceased approached, slopes gradually downward to within a few feet from the track. The cut extends over six hundred feet to the west of the highway, and the

tracks as they go in that direction curve to the left or south. On the day in question the deceased was driving a slow, easy-going horse, and was last seen about a quarter of a mile north of the crossing driving slowly with the reins in his hands. Approaching the track from the north on the highway there is quite an up grade. Plaintiff's witnesses, with the exception of one Delaney, testified that a person approaching the crossing from the north and at a point about thirty feet from it, can see along the track to the west only from 150 to 200 feet, and the view in that direction does not improve as one nears the track. Delaney, however, testified that the top of an object 12 or 13 feet high could be seen 600 feet west of the crossing at a point 30 feet north of it, and a person standing on the track could, from that point, be seen at a distance of from 425 to 450 feet. A train coming through the cut from the west could not be heard more than 150 to 200 feet from the crossing. The train was running at the rate of from 50 to 60 miles an hour. No bell was rung or whistle sounded until the train was well within the cut, when two or three short sharp blasts were blown. The deceased could not have obtained a view along the track to the west until he reached a point about 30 feet from the tracks, and at this point the view was better than it was nearer to or upon the track.

*Lewis E. Carr* for appellant. The trial justice did not err in dismissing the complaint, because the evidence, either direct or circumstantial, was not sufficient to sustain a finding that the deceased exercised any vigilance whatever as he approached the crossing where he was killed. (*Rodrian* v. *N. Y., N. H. & H. R. R. Co.*, 125 N. Y. 526; *Tolman* v. *S., B. & N. Y. R. R. Co.*, 98 N. Y. 198; *Cordell* v. *N. Y. C. & H. R. R. R. Co.*, 75 N. Y. 330; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 248; *Ruppert* v. *B. H. R. R. Co.*, 154 N. Y. 90; *Fitzgerald* v. *N. Y. C. & H. R. R. R. Co.*, 154 N. Y. 263; *Shotwell* v. *Dixon*, 163 N. Y. 43; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Young* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 500; *Heaney* v.

*L. I. R. R. Co.*, 112 N. Y. 122.) The nonsuit was right, because the evidence was not, sufficient to sustain a finding that looking and listening by the deceased was impossible, or would have been unavailing, and he was, therefore, excused from such vigilance, and the plaintiff excused from making proof as to its exercise by the deceased. (*Tolman* v. *S., B. & N. Y. R. R. Co.*, 98 N. Y. 198; *Bond* v. *Smith*, 113 N. Y. 378; *Krauss* v. *W. V. R. R. Co.*, 69 Hun, 482; *Hoffmann* v. *F. R. R. Co.*, 67 Hun, 581; *Foran* v. *N. Y. C. & H. R. R· R. Co.*, 64 Hun, 510; *Whalen* v. *N. Y. C. & H. R. R. R. Co.*, 58 Hun, 431; *Fowler* v. *N. Y. C. & H. R. R. R. Co.*, 74 Hun, 141; *Salter* v. *U. & B. R. R. R. Co.*, 75 N. Y. 273.)

*Jacob L. Ten Eyck* for respondent. It was for the jury to say, under all the surrounding circumstances in this case, whether the deceased was free from negligence on his part. (*Voak* v. *N. C. Ry. Co.*, 75 N. Y. 323; *Gorman Case*, 32 N. Y. Supp. 482; *Butcher* v. *N. Y. C. & H. R. R. R. Co.*, 98 N. Y. 132; *Getman* v. *D., L. & W. R. R. Co.*, 162 N. Y. 30; *Hurley Case*, 35 N. Y. Supp. 350; *Stackus* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 464; *Smedis* v. *B. & R. B. R. R. Co.*, 88 N. Y. 13; *Greany* v. *L. I. R. R. Co.*, 101 N. Y. 423; *Massoth* v. *D. & H. C. Co.*, 64 N. Y. 529.) Under all the circumstances in the case it was for the jury to say whether the speed of the train did not outstrip the warning and whether the notice of its approach was not commensurate with the speed. (*Hunt* v. *F. R. R. Co.*, 22 App. Div. 212; *Martin* v. *N. Y. C. & H. R. R. R. Co.*, 27 Hun, 532; 97 N. Y. 628; *Nutting Case*, 47 N. Y. Supp. 327; *Wylde* v. *N. R. R. Co.*, 53 N. Y. 156; *Milliman* v. *R. Ry. Co.*, 3 App. Div. 109; *Cushman* v. *De Mallie*, 46 App. Div. 381; *Carpenter* v. *P. R. R. Co.*, 13 App. Div. 350; *Worster* v. *F. S. S. & G. S. F. R. R. Co.*, 50 N. Y. 203; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 455; *Pitts* v. *N. Y., L. E. & W. R. R. Co.*, 79 Hun, 549.) The plaintiff is entitled to go to the jury for the reason defendant usually blew its whistle and rung its bell at this crossing but failed on the occasion in question, in that

such failure lulled the deceased into security that no train was near and thus induced him to cross. (*Dyer* v. *E. Ry. Co.*, 71 N. Y. 230; *Weber* v. *N. Y. C. & H. R. R. R. Co.*, 58 N. Y. 451; *Vandewater* v. *N. Y. & N. E. R. R. Co.*, 74 Hun, 32; affd., 135 N. Y. 589; *Casey* v. *N. Y. C. & H. R. R. R. Co.*, 78 N. Y. 518; Beach on Contrib. Neg. [2d ed.] pp. 93, 94, § 67; *Swift* v. *S. I. R. T. R. R. Co.*, 123 N. Y. 645; *Byrne* v. *N. Y. C. & H. R. R. R. Co.*, 104 N. Y. 363; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 N. Y. 289; *Lewis* v. *N. Y., L. E. & W. R. R. Co.*, 123 N. Y. 501; *Nash* v. *N. Y. C. & H. R. R. R. Co.*, 51 Hun, 594; *Bissegel Case*, 14 Abb. Pr. [N. S.] 29.)

WERNER, J.   It has become a truism in the law of negligence that each case depends upon its own particular facts. This branch of the law is now well settled and the great diversity of decisions in negligence cases arises, not from differences between the courts as to what the law is, but in the effort to apply it to the facts of each given case.   We have here a case governed by the most fundamental and primary principles of the law of negligence.   The two questions involved are, *first*, was the defendant guilty of negligence; and, *second*, was the plaintiff's intestate free from contributory negligence.   The burden was upon the plaintiff to establish each of these propositions.   The sufficiency of the evidence to warrant a finding of negligence against the defendant being conceded, we have to inquire whether there is evidence upon which a jury could properly find that plaintiff's intestate was free from contributory negligence, or whether the circumstances and surroundings attending the accident were such that no degree of care on the part of the decedent would have been availing.   As there were no eye-witnesses to the accident and the decedent was last seen about a quarter of a mile north of the crossing at which he was killed, the case is barren of direct evidence upon the subject of his conduct in approaching and attempting to go over this crossing.   The record is equally silent as to any circumstances which may

have attended the decedent's approach to this crossing and
which would bear directly upon what he did or omitted to do.
It is quite clear, therefore, that this case does not come within
the principle of those authorities which lay down the rule that
even where there are no eye-witnesses to an accident resulting
in death, the question of decedent's contributory negligence
may depend upon inferences to be drawn by the jury from
the circumstances attending the accident. (*Smedis* v. *Brook-
lyn & R. B. R. R. Co.*, 88 N. Y. 20; *Kellogg* v. *N. Y. C. &
H. R. R. R. Co.*, 79 N. Y. 75; *Palmer* v. *N. Y. C. & H.
R. R. R. Co.*, 112 N. Y. 234; *Schafer* v. *Mayor, etc., of N.
Y.*, 154 N. Y. 466; *Pruey* v. *N. Y. C. & H. R. R. R.
Co.*, 41 App. Div. 158; affd. in this court, 166 N. Y. 616.)
Here there are no facts or circumstances from which a jury
could say what the decedent did or omitted to do when he
approached this crossing.

We are thus brought to the last and principal contention of
the plaintiff, which is that the character of the crossing and
the conditions surrounding the accident were such that the
decedent could neither have seen nor heard the approach of
the train with which he collided, in time to save himself.   If
this is true the case is brought within the other rule laid down
in *Smedis* v. *Brooklyn & R. B. R. R. Co.*, *Palmer* v. *N. Y.
C. & H. R. R. R. Co.*, *Kellogg* v. *N. Y. C. & H. R. R. R.
Co.*, and *Pruey* v. *N. Y. C. & H. R. R. R. Co.* (*supra*), to
the effect that when the circumstances and conditions sur-
rounding an accident are such that it is unavailing to look and
to listen the question whether a decedent was free from con-
tributory negligence may be submitted to the jury.   Let us
briefly recapitulate the facts and circumstances upon which
this contention is based.   The accident happened about noon
on a bright, clear day at a country highway crossing of a
single-track railroad.   The decedent was a man of mature
years, in good health, in the possession of all his faculties, and
thoroughly familiar with this crossing.   He was driving a
gentle, easy-going horse, which when last seen, about a quarter
of a mile north of this crossing, was jogging along on a slow

trot. We must assume from the evidence that. no bell or whistle was rung or sounded until an instant before the accident, when two short sharp blasts of the whistle were given, and that this was probably the danger signal occasioned by the decedent's presence upon, or proximity to, the track instead of the usual or ordinary warning whistle for the crossing. It is impossible to describe in words the precise character of this crossing. As shown in the preceding statement of facts, the railroad approaches this highway from the west through a cut and upon a curve over 600 feet in length. The sides of the cut are sloping, and in some places upwards of forty feet in height. The physical situation at the intersection of this railroad and highway is such that a better view is obtained of the railroad along this curve at a point in the highway about 30 feet north of the track than at any other place. At this point the track is plainly visible to the west for a distance of from 150 to 200 feet; or according to the evidence of one of plaintiff's witnesses, from 425 to 450 feet. The latter witness also testified that an object 12 or 13 feet high, the assumed height of a locomotive, could be seen from the same point for a distance of 600 feet to the westward. At the point stated a train coming from the west through this cut could not be heard until it came within 150 or 200 feet of the crossing, and, as there was a slight wind from the east on the day of the accident, it may properly be assumed that the train could not have been heard until after it came into view. The evidence also. tends to show that after leaving the point in the highway 30 feet north of the railroad track, the view to the west is considerably shortened until the railroad track is reached, when the view is again somewhat extended, but still not as good as at the point indicated. The train with which decedent collided was moving at the rate of 50 or 60 miles an hour, giving no other signal or warning of its approach than that above referred to. These facts show that this was an exceedingly dangerous crossing. It was rendered so, however, not by the shifting or variable conditions of the railroad traffic at this point, but principally by the fixed and constant

physical environment above described. The decedent, who was perfectly familiar with the surroundings, approached this crossing on the day of the accident under very favorable conditions as to time and weather. He was bound to exercise reasonable care for his self-preservation ; that is, he was bound to exercise that degree of care which a reasonably prudent man would use, knowing the kind and extent of the danger to be apprehended. What active duty was imposed upon the decedent in the exercise of reasonable care ? The answer is obvious and simple. He was required to look and listen. Nothing could excuse the absence of this degree of care, or justify the lack of evidence tending to show that it was exercised, except proof that under the conditions which existed it would have been unavailing. Did the decedent either look or listen before he went upon this railroad track ? We can find no answer to this question in the record. As we have stated, there is not a single fact or circumstance in the evidence which sheds any light upon the decedent's movements between the time when he was seen a quarter of a mile north of the railroad track and the instant when he met his death. Could he have heard if he had listened, or could he have seen if he had looked ? The evidence shows affirmatively that neither of these safeguards would have been unavailing. Upon the facts before us it must be assumed that the situation was one in which it was difficult either to hear or see in time to avoid danger. But it was possible to hear and to see, and, therefore, it was the duty of the decedent to use his faculties of sight and hearing in the exercise of such reasonable care as the known danger of the place required. Had the evidence shown, or tended to show, that either or both of these precautions would have been utterly useless, that branch of the case could have been properly submitted to a jury upon the question whether the decedent had exercised such reasonable care as the exigencies of the situation rendered possible. But when it was once shown that the conditions were such that the decedent, by the exercise of his faculties of sight and hearing, might have averted the disaster, it became neces-

sary for the plaintiff to go a step further and give some affirmative evidence from which a jury could have found that the decedent was free from contributory negligence. She has failed in this particular. There is neither direct nor circumstantial evidence which points either to the presence or absence of contributory negligence on the part of the decedent and the case, therefore, falls within the rule very tersely expressed in *Wiwirowski* v. *L. S. & M. S. Ry. Co.* (124 N. Y. 420) and *Cordell* v. *N. Y. C. & H. R. R. R. Co.* (75 N. Y. 330) as follows: "When the circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, a refusal to nonsuit is error." Further illustrations of the rule that a plaintiff cannot recover in such an action without some affirmative evidence to show the absence of contributory negligence may be found in *Tolman* v. *S., B. & N. Y. R. R. Co.* (98 N. Y. 198); *Rodrian* v. *N. Y., N. H. & H. R. R. Co.* (125 N. Y. 527); *Reynolds* v. *N. Y. C. & H. R. R. R. Co.* (58 N. Y. 248), and *Bond* v. *Smith* (113 N. Y. 378). Our conclusion herein may be briefly summarized in the statement that to permit the submission of such a case as this to a jury upon the question of decedent's contributory negligence would result, not merely in the extension of a rule which has already been stretched to the utmost degree, but in the abrogation of the rule itself.

The order of the Appellate Division must be reversed, and the judgment of the Trial Term affirmed, with costs in all courts.

PARKER, Ch. J., GRAY, BARTLETT, MARTIN, VANN and CULLEN, JJ., concur.

Ordered accordingly.