KARL SESSELMANN, Respondent, *v.* METROPOLITAN STREET RAILWAY COMPANY, Appellant.

*Duty of a street railway company as to the speed of its cars at street crossings — a question for the jury — verdict for $10,000, sustained.*

It is incumbent upon a street railway company to have its cars under control at street intersections; it is not enough to reduce the speed of the cars at such points, if the reduction of speed does not give the motorman that control of the car which is necessary for the protection of pedestrians and others having rights equal to the street railway company at such street intersections.

The question whether a street car was under the required degree of control at a street intersection is always a question for the jury.

A verdict for $10,000, rendered in an action to recover damages for personal injuries sustained by the plaintiff, will not be reduced upon appeal, where it appears that the plaintiff is forty-five years of age, and prior to the accident earned from three to five dollars per day at his trade as a mason, and that, as a result of his injuries, he is no longer able to work at his trade or do more than the work of a common laborer, and that he has suffered much pain and has incurred considerable expense for doctor's bills.

APPEAL by the defendant, the Metropolitan Street Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Queens on the 13th day of January, 1902, upon the verdict of a jury for $10,000, and also from an order entered in said clerk's office on the 15th day of January, 1902, denying the defendant's motion for a new trial made upon the minutes.

*Charles F. Brown* and *Henry A. Robinson* [*Theodore H. Lord* with them on the brief], for the appellant.

*Charles A. Jackson* [*John Hetherington* with him on the brief], for the respondent.

WOODWARD, J.:

"It has become a truism in the law of negligence," say the court in *Wieland* v. *Delaware & Hudson Canal Co.* (167 N. Y. 19, 23), "that each case depends upon its own particular facts. This branch of the law is now well settled, and the great diversity of decisions in negligence cases arises, not from differences between the courts as to what the law is, but in the effort to apply it to the facts of each given case. * * * The two questions involved are, *first*, was the defendant guilty of negligence, and, *second*, was the plaintiff's intestate free from contributory negligence." These same questions are always presented, and courts and juries are ever at work to solve them consistently with established rules and the ends of substantial justice. Upon a former appeal in this case from a judgment of nonsuit we held that the plaintiff had afforded evidence which entitled him to go to the jury, and upon the new trial, where the evidence is in all essential particulars the same, the jury has brought in a verdict upon which a judgment has been entered for $10,885.62. The defendant appeals from the judgment and from an order denying its motion for a new trial.

The defendant urges upon this appeal that the complaint should have been dismissed at the close of plaintiff's evidence, but, after an examination of the testimony of the plaintiff, supported in its important particulars by an apparently disinterested witness of the accident, we are unable to concur in this view. This accident occurred

at a street intersection where the rights of the plaintiff and defendant were equal, at a point where the plaintiff had the right to assume that the defendant would have its car under control, and would, as the operator of a powerful engine of destruction, be vigilant in protecting or preserving the equality of rights on the part of pedestrians and others lawfully using the highway. When the law declares that the rights of parties are equal at a given point, it does not mean that the more powerful of the two may disregard the approach of the weaker and gain and pass the point without any regard for the latter. It means that each, having regard for the rights of the other, considering the dangers to be anticipated from a disregard of the mutual rights of the parties, may make use of the highway in a lawful manner, and this necessarily devolves upon the defendant, in the operation of its cars at street intersections, the duty of having them under control. It is not enough that the speed shall be reduced, if that reduction of speed does not operate to give the motorman that control of his car which is necessary to the equal rights of pedestrians and others at street intersections, and it is always a question for the jury whether the car is in such control. The plaintiff's evidence was sufficient to permit the jury to reach the conclusion that he was struck at one side of a street and carried or pushed by the car to the other side of the street before the car came to a standstill, and that this distance was twenty-five or thirty feet; that there was no bell sounded or other warning given. This was sufficient evidence for the jury to consider upon the question of the defendant's negligence.

The plaintiff had testified that he had transferred to a downtown Second avenue car at Ninety-second street and proceeded down on the Second avenue car to Seventieth street, where he got off on the west side of the track and stood there a couple of moments. He heard no other car. He says he looked up and down and saw no other car except the one from which he had just alighted, when he was struck by a car coming uptown. He testified that he did not see the car that struck him at all until it ran him down. We are of the opinion that the plaintiff had shown some degree of care, and that it would have been error for the court to have dismissed the case at the close of plaintiff's evidence. In the defendant's evidence there was the testimony of the motorman that he saw the

plaintiff starting toward the crossing when his car was fifty feet from the point of intersection; that the plaintiff was on a sort of run toward the crossing; that he stopped on the west track, and that when the car was within six or eight feet of the crossing the plaintiff started again; that the motorman then rang the bell, shouted and reversed his power; that when he first saw the plaintiff his car was about fifty or sixty feet from the crossing, running at about its usual speed; that he slowed down to about four or five miles an hour, and that at that rate of speed he could stop his car in about sixteen or eighteen feet. He admits, however, that after having slowed down, and after reversing his power, his car ran twelve or fourteen feet after striking the plaintiff, and the evidence of the plaintiff is that the distance was twenty-five or thirty feet. Taking the facts as they might properly be found by the jury, we are of opinion, for the reasons and upon the authority contained in the previous opinion in this case (*Sesselmann* v. *Met. St. Ry. Co.*, 65 App. Div. 484), that it was not error to allow the jury to determine the questions presented.

We are unable to agree with the appellant that the verdict is so far excessive as to warrant this court in reducing the amount. The plaintiff is forty-five years of age, a mason who had earned from three to five dollars per day. One of his hands is practically ruined for the purposes of his trade, and he has suffered much pain; has paid, or is liable to pay, considerable in doctors' bills and does not look forward with hope to the time when he will be the same man physically that he was before the accident. The amount may seem large, but the years must look long to the man whose left arm and hand are in the condition of those of the plaintiff, not to mention the other injuries he has suffered. He is unable to do more than the work of a common laborer, whereas he formerly earned good wages, and we are unwilling to interfere with the verdict of the jury upon the amount of damages.

The judgment and order appealed from should be affirmed.

Judgment and order unanimously affirmed, with costs.