(78 App. Div. 402.)

WARD v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, First Department.  January 23, 1903.)

1. RAILROADS—CROSSING ACCIDENT—CONTRIBUTORY NEGLIGENCE—EVIDENCE.
   Evidence in an action for death of a pedestrian killed at a railroad crossing *held* insufficient to go to the jury on the question of deceased's freedom from contributory negligence, by looking and listening.
   O'Brien and Hatch, JJ., dissenting.

Appeal from trial term, New York county.

Action by Mary O. Ward, administratrix of Martin J. Ward, deceased, against the New York Central & Hudson River Railroad Company. From a judgment entered on dismissal of the complaint at the trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

George W. Bristol, for appellant.
Robert A. Kutschbock, for respondent.

INGRAHAM, J.  Upon the trial of this action the court submitted special questions to the jury.  The first was as to the defendant's negligence, which the jury answered in the affirmative; second, as to the freedom of the deceased from contributory negligence, which was also answered in the affirmative; and to the third question the jury fixed the damages caused to the next of kin of the deceased at $7,833.33. Before these questions were submitted to the jury, the defendant had made a motion to dismiss the complaint, which motion the court reserved until after the jury answered the special questions submitted to them, and subsequently dismissed the complaint; and it is an appeal from the judgment entered upon this dismissal of the complaint that is now before us.

We think the question as to the negligence of the defendant was properly submitted to the jury, and the only question presented upon this appeal is whether the evidence as to the freedom of the deceased from contributory negligence was sufficient to sustain the finding of the jury in that regard.  On the 30th day of November, 1897, at about 15 minutes before 10 o'clock in the morning, the deceased was crossing Eagle avenue, in the 23d ward, in the city of New York, at 149th street, and was there struck by a train of the defendant and killed.  The only witness called by the plaintiff who saw the accident was one Monaghan, who testified that he was at the time driving a truck down 149th street west of Eagle avenue, in which the tracks of the defendant's road were laid; that as he drove down 149th street he saw the deceased standing on the corner of Eagle avenue and the street on the westerly side of Eagle avenue; that while there the deceased "looked apparently up the track, in the direction of where the train comes out.  * * *  He turned and looked that way, and then he started to walk down towards the track, on the north side of 149th street.  * * *  I did not see him until the locomotive came right out of the cut, and hit him, and threw him on the opposite track, and cut him right in half"; that it was about 25 or 30 feet from where

the deceased was standing to the track when he looked; that there were some telegraph poles, which in a way obstructed the witness' view from the point at which he was when he saw the deceased apparently look up the track; that there was no whistle blown or bell rung from the locomotive as it approached, and that the train was going about 5 or 6 miles an hour at the time; that after the accident the train stopped about 150 or 200 feet beyond the north side of 149th street; that it was a windy, gusty day, and the wind was blowing a good deal of dust; that there were no gates at the crossing, and no signboard, at that time; that the witness had seen Ward in this locality before. Upon cross-examination the witness said that he saw the deceased after he looked when he was about halfway between the track and the corner; that he was then walking towards the track, looking straight ahead; that as the locomotive came out of the cut the witness checked his horses to allow the train to pass, and he was thus engaged attending to his horses until the locomotive was in front of him, when he looked around and saw the deceased just as the engine struck him; that the witness was at that time about 75 feet from the track, and that the witness did not look towards the cut after he left the side of Eagle avenue until he was struck; that the witness was looking for a train as he approached the tracks; that he had no trouble in seeing the approaching locomotive in time to stop; that the witness had frequently seen Ward in this locality walking along 149th street, near these railroad tracks, and crossing them; that the witness was about 100 feet from the track when he first saw the deceased looking up the track; and that he looked up the track about the same time, and did not see any train. A civil engineer was called by the defendant, who testified that he measured the distance from a point on Eagle avenue at the cross-walk to the place where a train would be visible coming out of this cut, and that it was 361 feet; that he also measured the distance from the northeast corner of Eagle avenue and 149th street to the first rail of the defendant's track on the northerly cross-walk of 149th street, and that was 51 feet; that, standing on the corner of 149th street and Eagle avenue, he could see the entrance to the cut, which was 361 feet from that point; and that there were no telegraph poles which would obstruct the view of a locomotive or train of cars from that point. This testimony is undisputed, and I think the court was justified in accepting the measurements made by the engineer as the distance from the point where the deceased stood at the time he was said to have looked up the track, and the point at which a locomotive could be seen coming from the cut. There was no evidence to justify any other finding as to this distance, and also the distance from the point where the deceased stood when he looked to the nearest track of the defendant's road as 51 feet. At that time, when the deceased was said to have looked, Monaghan was about 100 feet from the track, and therefore at a considerable distance beyond the deceased; and the distance that he could see up the track, which he estimates at from 150 to 200 feet, was probably more limited than the distance that the deceased could see. Whether or not the deceased at the time he looked did see the locomotive does not appear, but the evidence of all the witnesses is that from the time the deceased

apparently looked, as he stood at the corner of the street, until he was struck, he did not look again, and took no precaution to avoid being run over. The train was in full sight of the deceased for a distance of at least 361 feet, and during the time that the train was coming that distance, if the deceased had looked, he must have seen it. He was apparently struck by the locomotive as he stepped upon the track, and it is entirely evident that, if he had looked during the time that the train was moving 361 feet, he must have seen the train. There was no evidence that his eyesight was defective, that he was not in full possession of his faculties, or that anything could have obstructed his view of the train if he had looked for it. Can it be said that an individual crossing a steam railroad track, who thus approaches and crosses the track without doing anything to ascertain whether or not a train was approaching, is not negligent? It seems to me that the established rule in this state is that such an attempt to cross the track of a steam railroad is negligence. This question has been presented to the court of appeals in many cases, and I call attention to but two or three of them, where a rule has been laid down which seems to conclusively establish that such an act on the part of an individual is not such care as the law requires, to entitle a plaintiff injured to recover:

In Woodard v. Railroad Co., 106 N. Y. 369, 13 N. E. 424, at a point along the road upon which the plaintiff was proceeding, 31½ feet from the intersection of the street, the rails of a switch could be seen to the west a distance of 57 feet, and when within 10 feet of the track it could be seen a distance west of 137 feet. In that case the plaintiff's intestate and one Phelps approached the crossing, and the deceased was struck at the southerly rail of the switch, when almost across it, by one of the coal cars of the defendant's road, moving by its own momentum. The accident occurred in the middle of a bright, clear day, when nothing existed to hinder or obstruct the sight, when the injured man was on foot and could have stopped at any instant, and when the merest glance along the switch to the west would have developed the approaching danger; and the court said that:

"It is absolutely certain that, at any time when within ten or fifteen feet, deceased had only to look and pause, to be safe. * * * So that the facts make it absolutely certain that Woodard and Phelps either looked, and, seeing the car coming, undertook to cross in front of it, or did not look, when that was their duty, and went blindly upon the track, taking the chances of what might occur. * * * The case is one where ordinary prudence and care was not shown or inferable, and for which no excuse or palliation can be given."

In Cullem v. Canal Co., 113 N. Y. 667, 21 N. E. 716, the deceased, driving a horse attached to a wagon, approached the crossing in the direction from which the engine was approaching until he got upon the tracks. It appeared that from a point 70 feet from the crossing the track to the south could have been seen for 146 feet by the deceased, if he had looked, and 50 feet from the crossing he could have seen it for 220 feet. The court upheld a nonsuit, stating that the duty which rests upon a traveler in approaching a railroad to look and listen was not discharged by the intestate; the court saying:

"There is no evidence that the intestate did look or listen. On the contrary, the strong inference from the evidence is that he neither looked nor listened; and there is no reasonable ground for the supposition that he was in a position where he had to choose between imminent perils, and that he could not have escaped one without encountering the other."

In Wiwirowski v. Railway Co., 124 N. Y. 420, 26 N. E. 1023, the court, in reversing a judgment for the plaintiff, held that:

"They were in a known place of danger, and, had they exercised their senses under the circumstances, it is at least probable that they would have both seen and heard the approaching train. Freedom from contributory negligence cannot be assumed."

In Wieland v. Canal Co., 167 N. Y. 19, 6 N. E. 234, 82 Am. St. Rep. 707, it appeared that about 30 feet from the track where the plaintiff's intestate was killed the track was plainly visible from the west for a distance of 150 to 200 feet, and that at this point a train coming from the west through the cut could not be heard until it came within 150 or 200 feet of the crossing; that the train with which the decedent collided was moving at the rate of 50 or 60 miles an hour; that the deceased, when approaching this track, was bound to look and listen, and nothing could excuse the absence of this degree of care, or justify the lack of evidence tending to show that it was exercised, except proof that, under the conditions which existed, it would have been unavailing; that the deceased, if he had looked or listened, could have seen or heard the approaching train, and when it was shown that the conditions were such that the decedent, by the exercise of his faculties of sight and hearing, might have averted the disaster, it then became necessary for the plaintiff to go a step further, and give some affirmative evidence from which a jury could have found that the accident was free from contributory negligence.

In Hudson v. Railroad Co., 61 App. Div. 134, 70 N. Y. Supp. 350, we held that the plaintiff was guilty of contributory negligence in a case much like the one under consideration. It there appeared that the plaintiff walked from a point from 25 to 30 feet from the track without looking or listening for an approaching train; that he testified that it took him about 7½ seconds to walk from the place from where he looked toward the west, to the track itself, and that, when about 10 or 12 feet from the track, he hesitated 1 or 2 seconds, and that it was 10 or 11 seconds from the time he started to walk to the track until he was upon it,—the plaintiff thus walking upon the track without taking any care to ascertain whether or not there was any approaching train which would render his approaching the track dangerous. In that case we held there was such negligence as precluded the plaintiff from recovering, stating the rule that:

"Plaintiff was bound to look when he was in such a situation that he could see whether there was a train in sight which would prevent his crossing the track in safety. Looking before he reached the point that would give him that information was not performing the duty resting upon him, and which he was bound to perform before he could be said to be free from contributory negligence."

We think this case is within the principles established in the cases to which attention has been called, and that the court below was justified in dismissing the complaint upon the ground that the plain-

tiff had not sustained the burden of proof that the deceased was free from negligence contributing to the injury.

It follows that the judgment appealed from should be affirmed, with costs.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

O'BRIEN, J. (dissenting). I agree with Mr. Justice INGRAHAM in his conclusion that upon the evidence the question of defendant's negligence was one for the jury, but I dissent from his further conclusion that from the evidence the deceased was, as matter of law, guilty of contributory negligence; thinking, as I do, that this question, also, was one for the jury. These facts, so far as given in the opinion, are correctly stated; but there is one feature which is not given sufficient prominence, and which, I think, is important as bearing upon the question of contributory negligence. The cases relied upon in the prevailing opinion are those having relation to a steam railroad, upon which trains regularly run, and in approaching which an active duty of care devolves upon one attempting to cross the tracks. The place where this accident occurred was within the city limits, and in the heart of a populous district, and where trains did not regularly run. There was but a single track, constituting a switch or connecting line or siding, which was occasionally used in moving cars loaded and unloaded at irregular intervals to and from Port Morris to the main line. The train which struck the man consisted of but three cars, with the engine running backwards, and was on its way to the freight-yard at Melrose. The accident occurred at a crossing much frequented by the public, where Eagle avenue joins 149th street; the track lying in 149th street, and intersecting it diagonally. So little was the track used that it was thought unnecessary to keep stationed at that place a flagman, or provide a gate or signpost, as it would certainly be the duty of the railroad to do if the track had been in frequent use for the passage of trains. One familiar with these conditions, as the deceased was, according to the testimony, had no such active duty imposed upon him as would have been the case were he approaching and attempting to cross the main tracks of a railroad. On the contrary, it seems to me, he had the right to assume that at such occasional times as this track was used, and it was attempted to round the curve through the cut which opened into the street and avenue at this point, those in charge of the train would give some warning of its approach. That no such course was followed appears from the prevailing opinion; and, in the absence of any warning or notice, I do not think it can be said, as a matter of law, that the deceased, having no reason to apprehend that at that time a train would be likely to approach, was guilty of contributory negligence in attempting to cross. The plaintiff, moreover, did not have the benefit of the testimony of the deceased as to just what care he observed in coming upon the track. As said in Schafer v. City of New York, 154 N. Y. 472, 48 N. E. 751:

"If he had survived the accident, it would have been necessary for him, in order to meet the burden of proof, to state what he did and what he tried

to do, fully and explicitly; but, as he is dead, less evidence is required of his personal representatives. The plaintiff's intestate was bound to exercise reasonable care; but if, owing to the circumstances, the evidence of care was weak, it does not follow that it was not for the consideration of the jury. If there was any evidence upon the subject, the case should have been submitted to them for decision."

And in Rodrian v. Railroad Co., 125 N. Y. 529, 26 N. E. 741, it was said:

"In case of a death accident at a railroad crossing, it must often happen that the circumstances immediately preceding it, and the acts and conduct of the deceased, are left in great obscurity. But the rules of law governing the right of recovery are the same as in other cases, although slighter evidence of compliance with the duty cast upon a plaintiff might be deemed sufficient than where the injured person was alive and competent to testify."

It is true that in the case at bar there was an eyewitness, and therefore what has been said in many cases as to the relaxation of the rule requiring strict proof that the deceased was vigilant and observant as he approached the track is not entirely applicable; but the testimony of Monaghan, it seems to me, is not to be considered and read as though he saw or knew everything done by the plaintiff's husband before attempting to cross. He states merely what he did observe, and even from that evidence it appears that he saw the deceased standing, before starting to cross, on the westerly side of Eagle avenue, and near the corner of the 149th street crossing; that he—

"Looked apparently up the track in the direction of where the track comes out. * * * He turned and looked that way [southeast], and then he started to walk down towards the track, on the north side of 149th street. * * * I did not see him until the locomotive came right out of the cut, and hit him, and threw him on the opposite track, and cut him right in half."

And Monaghan further says:

"The cars * * * came right out all of a sudden,—out of this cut. * * * The whistle was not blown. * * * The bell was not rung. * * * I did not know they were coming till they were almost on top of me. * * * I looked up the track at the same time. I did not see any train."

The testimony of this witness, therefore, as to what he noticed with respect to the deceased before he attempted to cross, did not make out a case of contributory negligence, as matter of law, because it is evident therefrom that the deceased observed some care and caution in the way of looking for approaching trains before going to the track, and it does not establish that he did not thereafter observe care. As said in Rodrian v. Railroad Co., supra:

"If, in case of an accident at a crossing, it appears that the person injured did look for an approaching train, it would not necessarily follow, as a rule of law, that he was remediless because he did not look at the precise place and time when and where looking would have been of the most advantage. Many circumstances might be shown which could properly be considered by the jury in determining whether he exercised due and reasonable care in making his observation."

Here, according to the testimony, the plaintiff's intestate, after looking, attempted to cross without any reason to apprehend that a train was likely to approach; and the train which struck him came swiftly

and without warning, around a curve and through a cut, which, at a comparatively short distance, hid it from him entirely. Under such circumstances, the question of contributory negligence should have been presented to the jury. As said in Henavie v. Railroad Co., 166 N. Y. 285, 59 N. E. 902:

"If there is any reasonable evidence of care on the part of the plaintiff in an action to recover damages on account of negligence, it is for the consideration of the jury. There was some evidence of care on the part of the deceased, because he looked in both directions when he started across the avenue, as well as when he was halfway to the nearest track. There was no direct evidence that he listened, and there never can be when the subject of the accident is dead. It appears, however, that he was on the alert and using his eyes, which is some evidence, under the circumstances, that he was also using his ears. Moreover, the jury could have found that if he had listened he would not have heard the train, for there was no noise and no warning."

The inference which in this case could fairly be drawn from the evidence is that the deceased did not attempt to cross without taking some precaution, but that he stopped and looked. If at that time, as the jury might infer, there was no train in sight, and he proceeded to cross, and thereafter the train, before he had reached a place of safety, rounded the curve and came through the cut, traversed the intervening space without having given any warning of its approach, and struck him, it cannot, I think, be held that he was guilty of contributory negligence. Under such circumstances, taking the view most favorable for the defendant, it cannot be concluded, as matter of law, that if, after starting to cross, he had looked again, and seen the train approaching at a rapid rate, he could in the time have avoided the accident which resulted in his death. In other words, if the jury had the right to infer (as, from the evidence, I think they had) that, when the deceased stopped and looked, he did not see any train, and there was none in sight, owing to the contour of the country, and the situation of the crossing with reference to the track, which crossed it diagonally, and came through a cut and around a curve, then they might conclude (particularly as there is evidence that no warning was given of the approach of the train) that he could not have avoided the accident. As said in Pruey v. Railroad Co., 41 App. Div. 162, 58 N. Y. Supp. 800:

"The philosophy of the rule requiring a traveler approaching a railroad crossing to look and listen for a train before venturing upon the tracks rests upon a common-sense foundation. These are regarded as the most efficient acts in demonstrating the vigilance of such traveler, and most likely to apprise him of danger. If to look would be futile, then the person is absolved from an obligation which would be wholly mechanical. * * * The same principle applies where to listen would be of no practical moment."

A somewhat similar situation to that here appearing was presented, although from different causes, in the case of Noble v. Railroad Co., 20 App. Div. 43, 46 N. Y. Supp. 647, affirmed without opinion in 161 N. Y. 620, 55 N. E. 1098, where it was said:

"His duty was to look and listen. But to look was of no avail if the car or cars on the siding obstructed his vision, as may well have been the case in the fog, without his perceiving that there was any such obstacle there, or what the nature of the obstacle was. And while there is evidence that the engine bell on the Chicago Limited was rung as it neared Ashburton

avenue, the noise of the north-bound freight train could readily render its sound imperceptible to a listener situated as was the plaintiff's husband when he endeavored to cross the track."

In that case, as stated in the opinion—

"No one saw the accident, but, shortly after the train had passed southward, Noble was found dead near the track, fifty-six or fifty-seven feet south of the crossing, with his skull fractured and his side completely crushed in. Near him lay a small lantern, called a 'marker,' which was subsequently found to belong to the pilot beam of the locomotive."

The court sustained the verdict for the plaintiff, and said, after giving authorities:

"In the case last cited it is said that, if the surrounding facts and circumstances reasonably indicate or tend to establish that the accident might have occurred without negligence on the part of the deceased, a question of fact may arise, to be solved by a jury, requiring a choice between possible but diverging inferences. The case at bar seems clearly to fall within the class thus mentioned, and it is easy to find instances in the Reports where recoveries have been sustained upon less cogent proof than is here presented as tending to establish the absence of contributory negligence."

I regard the present case as presenting, for the reasons stated, much stronger evidence in behalf of the plaintiff on this subject than appeared in the authority cited, and think, therefore, that the question of contributory negligence should have been submitted to the jury, and that the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

HATCH, J., concurs.