Sadie Lamb, as Administratrix of the Estate of Michael Lamb, Respondent, *v.* Union Railway Company of New York City, Appellant.

**Contributory negligence — exercise of reasonable care by decedent — insufficiency of evidence to sustain such inference.**

The body of plaintiff's intestate was found badly mangled behind a passing car upon defendant's track. There was *no direct evidence* of the exercise of care on the part of the deceased, and the only question presented was whether the surrounding circumstances were such as to permit the inference that reasonable care was exercised by him. *Held,* upon examination of the evidence, and applying the rule that every inference must stand upon some clear, direct evidence, and not upon some other inference or presumption, that the circumstances point quite as much to the lack of reasonable care as to the exercise of reasonable caution on the part of the intestate, and hence a nonsuit was properly granted.

*Lamb* v. *Union Railway Co.,* 125 App. Div. 286, reversed.

(Argued April 2, 1909; decided May 4, 1909.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered March 11, 1908, which reversed a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term, and an order denying a motion for a new trial and granted a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Bayard H. Ames, John Montgomery* and *James L. Quackenbush* for appellant. The complaint was properly dismissed, because there was no evidence of freedom from contributory negligence. (4 Wigmore on Ev. § 2510; Will on Cir. Ev. § 280; *Gilman* v. *Deerfield,* 81 Mass. 577; *Brink* v. *E. R. R. Co.,* 47 App. Div. 483; *Wieland* v. *D. & H. C. Co.,* 167 N. Y. 19; *Walsh* v. *F., J. & G. R. Co.,* 187 N. Y. 563; *Perez* v. *Sandrowitz,* 180 N. Y. 397; *Pinder* v. *B. H. Ry. Co.,* 173 N. Y. 519; *Paladino* v. *S. I. M. Ry.*

*Co.*, 127 App. Div. 183; *Belford* v. *B. H. R. R. Co.*, 86 App. Div. 388; *Geleta* v. *B. & N. F. Ry. Co.*, 181 N. Y. 524; *Madigan* v. *T. A. R. R. Co.*, 68 App. Div. 123.)

*Sidney A. Syme* for respondent.   The question of deceased's contributory negligence should have been submitted to the jury as a question of fact.  (*Wazenski* v. *N. Y. C. & H. R. R. R. Co.*, 180 N. Y. 466; *Tolman* v. *S., B. & N. Y. R. R. Co.*, 98 N. Y. 198; *Fedjowski* v. *D. & H. C. Co.*, 12 App. Div. 589; *Monck* v. *B. H. R. R. Co.*, 97 App. Div. 147; 182 N. Y. 567; *Pruey* v. *N. Y. C. & H. R. R. R. Co.*, 41 App. Div. 158; *Beecher* v. *L. I. R. R. Co.*, 35 App. Div. 292; 161 N. Y. 222; *Loder* v. *M. S. R. Co.*, 84 App. Div. 591; *Lane* v. *B. H. R. R. Co.*, 85 App. Div. 85; 178 N. Y. 623; *Belford* v. *B. H. R. R. Co.*, 86 App. Div. 388; *Stevens* v. *B. H. R. R. Co.*, 59 App. Div. 23.)

CHASE, J.   The plaintiff's intestate was run over and killed by one of the defendant's trolley cars on October 20, 1906. This action is brought to recover damages therefor, and the plaintiff alleges that the intestate's death was caused solely by the defendant's negligence.   The testimony presented by the plaintiff upon the question of defendant's negligence was sufficient to require that that question be submitted to the jury for their determination.   The testimony was not, however, sufficient to present a question of fact as to the injury being willful or to justify a recovery against the defendant unless the intestate was free from contributory negligence.   The burden throughout the trial, therefore, was upon the plaintiff to show affirmatively either by direct evidence or the drift of surrounding circumstances that the intestate was free from negligence contributing to his death.  (*Tolman* v. *Syracuse, B. & N. Y. R. R. Co.*, 98 N. Y. 198; *Baxter* v. *Auburn & Syracuse Electric R. R. Co.*, 190 N. Y. 439.)

The accident occurred upon Webster avenue which extends from Mount Vernon towards the city of New York.   The avenue runs substantially north and south, and the place of the accident was a half mile or more south of the West Mount

Vernon station of the Harlem railroad. The intestate was about fifty-six years old. He supported himself, wife and daughter by working at anything he could find to do. He did not have a trade and prior to his death he had worked at different times in a saloon, bowling alley and at a florist's, and received therefor $1.25 by the day, or $7 by the week. The only history that we have of him or of the circumstances affecting the occurrence so far as he is concerned is given by his daughter, a young lady about twenty-one years of age. From her testimony it appears that he came home from his work on the day of the accident and about two o'clock of that day left with her for New York by trolley "To do some shopping, to buy something to eat." They returned by trolley to the Harlem railroad station. She says it was about or near eight o'clock in the evening, but subsequently testified "it may have been 7:20, and it may have been a little later." The daughter gave him some parcels that she had and left him standing on a corner and went across the street by the railroad station, a distance of about thirty or forty feet, to get a carriage that was standing there to take them home, and returned immediately and found that her father had gone. She testifies: "We lived about a mile from the station to the north. I know this place where my father was killed is south of the station about half a mile or more. My father didn't have to go down that road to go home; that was in the opposite direction from the road he would take ordinarily to get to our house. I do not know why he went down there; I don't know any reason for it at all. When I left him he was going home with me to take the bundles home that we had purchased. I just went as far as the station to look for a carriage and there was only one carriage there, right at the Harlem station. I did not get in the carriage and come back; I walked back. This isn't more than thirty or forty feet that I had to go to find this carriage; about that distance. While I walked this forty feet I did not speak to the carriage driver. I told him to go to the corner. Then I walked right straight back to the corner again and my father had disappeared."

In her efforts to find her father she went into the near-by stores and shops and to the places where he had been employed, but so far as appears, he was never thereafter seen by any one until after the accident.

Substantially the only testimony relating to the accident is given by two young men, a driver of a delivery wagon and his helper. They had been making deliveries in Mount Vernon and the driver testified that at half-past eight he was at the Harlem railroad station and the car started from there southerly at the same time that he started with his wagon. The wagon was in advance of the car and continued on the tracks in advance of the car going southerly at a speed of about five to eight miles per hour. As the avenue runs southerly from the Harlem railroad station, there is a double curve in it. When the wagon was at the first of the curves the driver turned off the track and the car passed so close to it as to rub against one of the wheels. As it passed the motorman leaned from the side of the car over the gate and said something which the witness did not understand. The driver further testified: "I did see something * * * down the road. We were looking down. I didn't pay much attention to the motorman and I see a dark object on the track. I couldn't distinguish whether it was a man or a woman, but I could see under the arc light — I could see somebody on the track.

"The Court: He said he saw an object on the track."

He followed the car with the wagon and when about 300 feet south of the southerly curve in the avenue the car stopped and the body of the intestate was found behind the car badly mangled.

The testimony of the helper who was riding with the driver, so far as he remembers the occurrences, corroborates the statement of the driver; but he says, referring to the intestate: "The first I saw of him was after the car was at a standstill and I saw him lying on the track a few feet back of the rear end of the car."

From the testimony of these two persons it appears that

Webster avenue is an unpaved street without sidewalks. It is lighted by arc electric lights and at the places mentioned there were very few if any adjoining buildings. The defendant has a track on the east and west sides of the traveled part of the avenue and the distance between the tracks is about twenty-one feet. On the night in question it was dark and foggy, and it had been raining and the avenue was muddy and filled with pools of water. Pedestrians using this avenue were accustomed to use the space between the east tracks as well as the traveled part of the avenue between the two sets of tracks. The car which struck the intestate was fully lighted and plainly visible. It was running south on the north-bound track by reason of the fact that a sewer was being built at a point between the Harlem railroad station and the car barns south of where the accident occurred, and it so interfered with the south-bound tracks that it had been necessary for some period of time to use the north-bound track for both north and south-bound traffic. There were no other vehicles in the avenue at the time of the accident. The driver and his helper both testified that they did not hear any bells after the car passed them. At the time of the accident the car was running at a medium speed and one of the passengers on the car testified that she heard the motorman "holler" and set the brakes just before the accident occurred. A surgeon who was called to the scene of the accident and examined the body testified that he did not find any evidence that the intestate had been intoxicated. From the place of the accident there was a level and straight track looking north for three hundred feet. By reason of the curves it was impossible when looking further north to determine whether a car was coming on the east or west track. There is absolutely no direct evidence of the exercise of care by the intestate, and the only question for determination upon this appeal is whether the surrounding circumstances are such as to permit of the inference that reasonable care was exercised by him.

By the opinion of the Appellate Division it appears that it would allow the jury to infer: 1. That the intestate was

familiar with the defendant's custom to run south-bound cars on the west track.   2. That he did not know that the east track was then used for south as well as north-bound cars. 3. That he was walking south with his back to the approaching car.   4. That he did not see or hear the car.   Upon these inferences and the presumption that a sane person will not commit suicide, it would allow the jury to find that the intestate exercised the care of an ordinarily prudent person.

We think that the facts do not admit of the necessary inferences to find the intestate free from contributory negligence. They are peculiar, unnatural and inexplicable.   The fact that the daughter went with her father to shop for something to eat; that it was deemed necessary by her, notwithstanding their limited property, to have a carriage to take them home, and that she went to engage a carriage while he waited, instead of the reverse, are of very little, if any, materiality as separate and independent facts; but taken together, and in connection with the disappearance of the father, they constitute some evidence that the daughter was watching and caring for him, and tend to an inference against instead of in favor of subsequent reasonable care on his part.   The brief moment of time which the daughter took in crossing the street to obtain the carriage was not sufficient to enable the father to disappear unless he did so deliberately and intentionally.   He must have hidden from her or run to escape her espionage. From the time that he evaded his daughter to the time of the accident was not less than half an hour, and probably more than an hour.   In any event, it was a sufficient length of time to enable him to walk several times the distance from the Harlem railroad depot to the place of the accident. The question naturally arises whether he was loitering on the tracks or whether he had been to some place further south, and was then facing north returning toward his home.   There is no evidence from which to infer that he was walking southerly with his back to the car except the simple fact that he was then at a point south of the place where he left his daughter.   The length of time that

had elapsed overcomes any inference that he was then walking southerly that might otherwise be indulged in. It is a well-settled rule of law that you cannot base inference upon inference. (*O'Gara* v. *Eisenlohr*, 38 N. Y. 296; *Ruppert* v. *Brooklyn H. R. R. Co.*, 154 N. Y. 90.) Every inference must stand upon some clear, direct evidence, and not upon some other inference or presumption. So far as appears there was nothing to divert the intestate's attention, or prevent his seeing the car if he was facing north. The presumption that he did not see the car or that in the exercise of reasonable care he would not have seen the car, depends wholly upon the other presumption that he was facing south. The plaintiff was also in a position to present to the court testimony as to the general condition of the deceased, both physically and mentally, and a full history of the day, with such other circumstances and surroundings as would materially aid in determining what inference, if any, should be drawn. Nothing whatever appears in the record from which any inference can be drawn save the general brief outline of the occurrences and circumstances that we have narrated. There is nothing to explain what was done by the intestate with the packages which he had or why he suddenly changed his mind and abandoned his intention to go home with his daughter and take the packages which he had purchased. The circumstances point quite as much to the lack of reasonable care, or even to the possibility of suicide, as to the exercise of reasonable care and caution on his part. Where the circumstances point as much to the negligence of the deceased as to its absence, or point in neither direction, a nonsuit should be granted. (*Wiwirowski* v. *L. S. & M. S. R. Co.*, 124 N. Y. 420; *Wieland* v. *Del. & H. Canal Co.*, 167 N. Y. 19.)

. The order of the Appellate Division should be reversed and judgment of nonsuit at the Trial Term affirmed, with costs in the Appellate Division and in this court.

CULLEN, Ch. J., GRAY and HAIGHT, JJ., concur; EDWARD T. BARTLETT, VANN and WILLARD BARTLETT, JJ., dissent.

Order reversed, etc.