SARAH. F. BEERS, Appellant, *v.* METROPOLITAN STREET RAILWAY COMPANY, Respondent.

*Negligence — injury to a passenger on a street car who, on alighting, passes behind the car on which she is riding and is struck by a car on the adjoining track — charge of the judge as to perjury and the statements of witnesses for the plaintiff inharmonious with the laws of nature.*

In an action to recover damages for personal injuries, the plaintiff testified that she alighted from one of the defendant's north-bound street cars at a street intersection; that she waited on the crosswalk until the north-bound car had started north, when, after looking both ways and seeing no car approaching, she passed over the north-bound track upon the south-bound track; that while on the south-bound track she was struck by a south-bound car.

Witnesses sworn on behalf of the plaintiff testified that the south-bound car was traveling at the rate of fifteen miles an hour, and that when the plaintiff started from the point at which she had alighted the south-bound car was from sixty to one hundred feet distant.

It was admitted that there was nothing to obstruct the plaintiff's view of the south-bound car at the time she claimed to have looked.

*Held*, that the question whether the plaintiff was guilty of contributory negligence was one of fact for the jury;

That it was error, requiring the reversal of a judgment entered upon a verdict in favor of the defendant, for the court to charge, *first*, that he believed the witnesses for one side or the other had perjured themselves, and that there was presented to the jury such a mass of conflicting evidence that it was improbable that the truth could be found, and that if it could not, the defendant must have the verdict; and, *second*, believing that there had been perjury, he was of the opinion that it had been committed by the plaintiff's witnesses, and that if he were sitting in the jury box he would lend his influence to find a verdict for the defendant; and, *third*, that, under the circumstances, it was quite impossible for the jury to find otherwise than that the plaintiff was guilty of contributory negligence, for her testimony and the story of her witnesses were so inharmonious with the laws of nature and the ordinary observations of men as to be incredible.


APPEAL by the plaintiff, Sarah F. Beers, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 3d day of March, 1903; upon the verdict of a jury, and also from an order entered in said clerk's office on the 9th day of February, 1903, denying the plaintiff's motion for a new trial made upon the minutes.

*William F. Walsh*, for the appellant.

*Henry Melville*, for the respondent.

HOOKER, J.:

This is an appeal from a judgment in favor of the defendant, entered upon a verdict of the jury and from an order denying plaintiff's motion for a new trial.

Plaintiff alighted from a north-bound street car in Fourth avenue in the city of New York, and waited on the crosswalk until it had started north on the easterly track and cleared the way for her to cross Fourth avenue westward. She was struck by a south-bound car on the westerly track and thrown back upon the north-bound track, sustaining severe injuries. The plaintiff testified that as the car on which she had been a passenger proceeded toward the north she looked both ways and saw no car approaching, and that she then attempted to cross defendant's south-bound track. Witnesses sworn in her behalf said that the car colliding with her was traveling at the rate of 15 miles an hour, and that when she started westerly from the point at which she had alighted it was from 60 to 100 feet north of the crossing on which she stood. It also appeared from plaintiff's evidence that the car traveled about 100 feet toward the south before it was brought to a stop, after its collision with the plaintiff.

Defendant's witnesses swore that the car was going slowly and was under control as it approached the crossing; that it was stopped within fifteen feet after the collision and before the rear of the car had passed the prostrate form of the plaintiff. One witness for the defendant testified that the fender caught her ankles, and it appeared from the evidence that her ankles were injured as a result of the collision. It appeared, undisputed also, that the hand rail of the left front corner of the car struck plaintiff's head, inflicting a scalp wound.

It is clear that the defendant's theory upon the trial was that the plaintiff deliberately walked into the car without paying sufficient attention to her surroundings, and that the fender of the car had actually passed a point opposite her feet before her head was struck by the hand rail. It was the plaintiff's theory that the fender hit her feet first, and her head was struck by the hand rail afterwards

on account of her being thrown backwards against it.   There was a sharp conflict of the evidence and the defendant's motion for a nonsuit, at the end of the plaintiff's case, upon the ground that the plaintiff had not shown herself free from contributory negligence, presented a question which is not altogether without doubt.

It is admitted that there was nothing in the range of plaintiff's vision between the point where she stood and the car which struck her at the time she looked towards the north, and yet she says she saw no car approaching.   The respondent urges upon this court to affirm the judgment for the reason that whatever errors may have been committed upon the trial they were not prejudicial to the plaintiff, because defendant's motion to nonsuit her should have been granted.   The facts in this case should be governed by the doctrine laid down in *Towner* v. *Brooklyn Heights R. R. Co.* (44 App. Div. 628); *Sesselmann* v. *Metropolitan Street R. Co.* (76 id. 336); *Cohen* v. *Metropolitan Street R. Co.* (63 id. 165) and *Turell* v. *Erie R. R. Co.* (49 id. 94).   While the facts are not identical in any of the cases cited, they are similar, and we believe the same reasoning should obtain here.   The Court of Appeals has recently held in *Zwack* v. *N. Y., L. E. & W. R. R. Co.* (160 N. Y. 362) where no circumstances appeared to indicate that the approaching train by which the plaintiff was struck was not in plain view before he reached the track, observable to any one looking in its direction, that the question of contributory negligence as thus presented was one of fact, saying : " But, it may be asked, if he looked towards the east at all why did he not see the coming train and avoid it ? That question may be asked, and generally is, in every case of this character.   It is an argument to be addressed to the jury and not to a court dealing with questions of law only."   We are not unmindful of that large number of cases which hold that the plaintiff was guilty of negligence as matter of law under circumstances which at first may seem similar to those in this case ; the language, however, in *Towner* v. *Brooklyn Heights R. R. Co.* (*supra*) states the rule which we think should control upon the facts disclosed by this record : " The plaintiff having looked in both directions before starting to cross, and seeing no car, was justified in walking across the street at a point where the rights of both parties were equal, and in assuming that a car running at a rate of speed calcu-

lated to make the crossing dangerous would give some notice of its approach or that it would be in the control of the motorman sufficiently to prevent his being run down."

This disposition of the point raised by the defendant renders necessary an examination of the charge of the learned trial court. After briefly reviewing the facts and the discrepancies in statements of witnesses he charged the jury as follows : " There has been perjury in this case. There has been wilful perjury in this case on one side or the other. Where is it? The plaintiff herself does not know anything about it. She does not say one word about the motion of the car. She did not even see the car. She did not even know it was the car that struck her. She does not know to-day whether a car struck her or whether a brewery wagon struck her. She did not see it at all. It might have dropped out of the sky for all she knows about it. * * * Out of this mass of testimony, this conflicting testimony, some of it surely perjured, do you feel that you know, to any reasonable degree of certainty, what the truth is? If you do not, there must be a verdict for the defendant. Any case that comes into court depending upon the testimony of witnesses that do not command your fair confidence and belief must fail. * * * Before you can take money out of the defendant's pocket and put it into the pocket of the plaintiff, you must be satisfied that justice demands it, and your conscience must speak with no uncertain sound. Is this such a case? I say this because so many cases come into this court, presenting the same features as this, where the conflict is so sharp that it is impossible to reconcile the testimony, and one is forced to the conclusion that one side or the other is perjured. I do not suggest for one instant which side has disclosed the truth of the matter. That is for you absolutely, but that this case is one which presents the question I put to you sharply, there is no doubt. If you are in grave doubt about what the truth of it is, there must be a verdict for the defendant. * * * When you can find one fact that arises out of the confusion of perjury, fasten to that and use it wherever it will serve."

Towards these remarks of the trial court we think that the criticism of the Court of Appeals by Judge GRAY in *Smith* v. *Lehigh Valley R. R. Co.* (170 N. Y. 394) as to similar statements in the charge upon the trial there reviewed are especially well directed. That two

or more of plaintiff's witnesses swore that the car traveled 100 feet before stopping after the collision, while the defendant's witnesses and its motorman being examined say it stopped within 15 feet, does not necessarily lead to the positive conclusion that one side or the other has committed perjury. The witnesses for the plaintiff, in the excitement of the moment, might have misjudged or easily mistaken the distance the car traveled, or the point at which it stopped. As Judge GRAY said in the case last cited : " They (the jury) were not permitted to reconcile, if possible, the testimony with that given by other witnesses. In a sense it was true that Tuttle spoke the truth, or spoke falsely; but the legal error was in the trial judge's forcing the jurors to find one way or the other upon such an issue. The relation of a fact from memory may be false, with no intention to deceive, and positive testimony by a witness may be unreliable, without willful perjury being attributable to him. (*Pierce* v. *Brady*, 23 Beavan, at p. 70.) They were placed in a position where their verdict for the defendant would, in a public manner, stamp a prominent member of the community as a perjurer; which they might well have shrunk from doing in a close case, if that was to be one of the results of their verdict for the defendant. The charge tendered a false issue and diverted their minds from their true duty, which was to consider all of the testimony, to weigh it carefully, to test the credit to be given to a witness by his apparent intention to speak the truth and, by the accuracy of his memory, to reconcile, if possible, conflicting statements as to material facts and, in such ways, to get at the truth and to reach a just verdict upon the issues."

The learned court below also charged the jury in this language : " Is it to be tolerated that in an open field with nothing in the way, an open street in broad daylight, that a man, woman or child, who is *sui juris*, shall be permitted to walk into a car so as to be hit by the left-hand corner of the front of the car without the imputation of negligence on his part where there is no acceleration in the speed of the car? If the speed of the car were suddenly accelerated, that would present a debatable question ; but I put it to you whether in any situation on that street, where there is no confusion, nothing else in the field except the two objects that come together, the woman and the car, whether a woman can meet with a collision on that street and say ' I did not see the car ; ' whether she can palm

off upon a jury such suggestions as that with success. I look at you and I see the jury. The field of vision is not a straight line. The field of vision involves a certain angle. I look in this direction, and I still see the jury, vaguely, although my direct point of view and the line of my eye to the jury is practically a right angle. A man crossing the street, even if he does not turn his head either way, does see with more or less vagueness, as you go away from the line of sight, objects; and such a moving object as a car, I submit it to you whether any person can cross a car track and be struck by the left-hand corner of the front of the car and urge before a jury of twelve men that he did not see the car. Mr. Van Zandt: I respectfully except to that. The court: You take your exception I mean to put it to this jury just as squarely as I can, and that they shall feel that this case, if no other, is to be determined on principles of common sense." And after plaintiff's attorney had requested a charge that plaintiff was not guilty of contributory negligence as matter of law if the jury found that a second of time before the car struck her she could have stopped, the court replied: " Not as matter of law. If it was a matter of law I would have decided it myself. I would not have submitted it to the jury. But I mean the jury shall attack it as a question of fact from a standpoint of common sense, if I can persuade them to do so."

This was, in our opinion, a virtual direction to the jury to find a verdict for the defendant. We have quoted thus largely from the charge instead of extracting the exact objectionable language, in order that it may be seen that the whole tenor of the charge was in consonance with the improper remarks of the court. The effect of the charge was to tell the jury, *first,* that he believed the witnesses for one side or the other had perjured themselves, and that there was presented to them such a mass of conflicting evidence that it was improbable that the truth could be found, and if it could not, the defendant must have the verdict; and, *second,* believing that there had been perjury, he was of the opinion that it had been committed by the plaintiff's witnesses, and that if he were sitting in the jury box he would lend his influence to find a verdict for the defendant; and, *third,* that, under the circumstances, it was quite impossible for the jury to find otherwise than that the plaintiff was guilty of contributory negligence, for her testimony and the story of her

witnesses were so inharmonious with the laws of nature and the ordinary observations of men,.as to be incredible.

Inasmuch as there were disputed questions of. fact in the case, it was error for the court to direct a verdict either way, and for this error the judgment and order must be reversed and a new trial granted.

Bartlett, Woodward and Hirschberg, JJ., concurred.

Judgment and order reversed and new trial granted, costs to abide the event.