CHARLES SCHASEL, Respondent, *v.* INTERNATIONAL RAILWAY COMPANY, Appellant.

Fourth Department, November 27, 1918.

**Railroads — street railroad — negligence — injury to passenger after alighting from car by another car passing in opposite direction — when passenger guilty of contributory negligence as matter of law — municipal ordinance regulating speed and control of car while approaching and passing another car standing for discharge of passengers.**

In an action for personal injuries it appeared that the plaintiff, a passenger on one of defendant's south-bound cars, and his companion alighted from the rear platform and passed around behind the car; that the plaintiff .was struck by another car going in the opposite direction on the next parallel track, which he claimed to have not seen or heard, although he had looked, and that there was no curve in the tracks and no intervening object to prevent the plaintiff seeing the car which struck him, except the one from which he had alighted, which car at the time was about twenty-five or thirty feet away. A municipal ordinance was received in evidence which provided as follows: " Every driver or other person having charge and control of any street railroad car within the City of Buffalo, while approaching and passing any other street railroad car standing for the discharge or reception of passengers, shall sound the gong and reduce the speed of his car to a rate not to exceed five miles per hour." Evidence examined, and

*Held,* that the plaintiff failed to use a reasonable degree of care for his own safety and was negligent as matter of law and, therefore, the judgment in his favor should be reversed and the complaint dismissed, and that under the circumstances the ordinance was not violated.

KRUSE, P. J., and HUBBS, J., dissented, with opinion.

APPEAL by the defendant, International Railway Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 16th day of February, 1918, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 15th day of March, 1918, denying defendant's motion for a new trial made upon the minutes.

*Penney, Killeen & Nye* [*Harold Brown* of counsel], for the appellant.

*Shire & Jellinek* [*Vernon Cole* of counsel], for the respondent.

FOOTE, J.:

Plaintiff has recovered a verdict for personal injuries inflicted by one of defendant's cars on February 28, 1916. He was a passenger on a car going south on Washington street in Buffalo. The car stopped at the near side of Mohawk street which crosses Washington, the front of the car being at the north crosswalk of Mohawk.. He and Schalberg, one of his witnesses, alighted from the rear platform and stood for a moment until the car proceeded and had moved " something like * * * thirty or forty feet," as he says, when he " looked up and down, saw everything was clear, then I went across." As he stepped onto the next parallel track he was struck by a car going north which he had not seen or heard. He says: " That car came along so speedy that it catched me; * * * she came too sudden, too fast, and there was no signal, no bell, nothing ring." He also says: " That car struck me; she came full speed and catched me." He looked just after his car had moved on and before he crossed the first track. He first says he looked again before stepping onto the second track, but afterwards says he does not remember whether he did or not.

Plaintiff's companion, Schalberg, got off the car immediately behind plaintiff. They worked in the same shop, about one block east of Washington street near Mohawk. It was a few minutes before seven o'clock in the morning, daylight and bright for February. They left the car at this place every morning. Schalberg says: " When the cars stopped he [plaintiff] steps off the car, walks around the hind end of the car. I gets off and walks around the hind end of the car. He stood still and I stopped. He looked and I looked. He started to go across. He got about almost to the middle of the east track; just then I saw a car coming. * * * Before I had a chance to speak, she give it to him [witness slapping his hands together]. * * * The fender * * * dragged him along probably ten or fifteen feet. * * * I grabbed his arm. * * * I pulled him away." The car was stopped with the rear truck at the point where plaintiff lay when Schalberg pulled him away. Schalberg says the car " wouldn't be going less than fifteen or twenty miles an hour," though he admits he is no judge of speed. He says he heard no bell or gong. He was three

or four feet behind plaintiff when the car struck him. There was no curve in the tracks and no intervening object to prevent seeing the north-bound car except the car from which they had alighted. Schalberg estimates he could see about twenty-five or thirty feet down the easterly track towards the south and that the south-bound car prevented seeing further. At that time he says he had one foot in the strip between the two tracks. He says plaintiff was looking at the same time. At that time plaintiff must have reached the first rail of the next track. Neither claims to have stopped walking after they started across.

A municipal ordinance received in evidence is as follows: "§ 44. Every driver or other person having charge and control of any street railroad car within the City of Buffalo, while approaching and passing any other street railroad car standing for the discharge or reception of passengers, shall sound the gong and reduce the speed of his car to a rate not to exceed five miles per hour."*

This differs from the ordinance in force when *Provoost* v. *International R. Co.* (151 App. Div. 240) and some other reported cases were decided, which required the approaching car to come to a stop.

At the close of plaintiff's case defendant's counsel moved for a nonsuit, and when that was denied, rested its case without offering any testimony, and moved that a verdict be directed in its favor, which was also denied. The trial court left it to the jury to say whether defendant's motorman was negligent in running his car too fast past the rear end of the other car just after it had started and without giving any signal with his gong. The jury were told that there was no violation of that part of the ordinance as to passing a standing car, but if they found a failure to approach the standing car at a speed reduced to five miles an hour for a reasonable distance, then they might find the ordinance violated. To the latter defendant's counsel excepted. It did not appear that plaintiff was aware of the ordinance or relied upon it.

The first impression undoubtedly is that plaintiff was negli-

---

* See Ordinances of the City of Buffalo, chap. 4, § 44.— [REP.

gent as matter of law in failing to look for a north-bound car from a safe place between the two sets of tracks where the other car did not obstruct his view; or in looking so inattentively as not to see the car which was in plain sight.

Judge BARTLETT said, for a unanimous court, in *Reed* v. *Metropolitan St. R. Co.* (180 N. Y. 315): " A person passing behind the rear of a car and stepping on to the track where a car may be approaching from the opposite direction is bound to satisfy himself that the way is clear." Plaintiff in that case testified that he looked before starting to pass behind the standing car and did not look again until he had stepped one foot over the first rail of the next track when he was struck by a car. His excuse for not looking again was that the other car prevented him from seeing and that he was listening for signals and none were given; still he was held guilty of negligence as matter of law. Plaintiff here had a better opportunity to see for he was not close behind a standing car but some thirty feet back of it at the time he stepped upon the second track.

In the *Reed* case, however, no question of violation of a municipal ordinance was involved, nor was it claimed that the car which struck Reed was being operated at a high rate of speed. We must consider, therefore, whether the circumstances of the present case serve to distinguish it from the *Reed* case sufficiently to require the question of plaintiff's contributory negligence to be left to the jury as a question of fact.

In *Maynard* v. *Rochester R. Co.* (136 App. Div. 212) this court reversed a judgment in favor of the plaintiff. It is quite similar in its facts to the present case in all essential respects, except that in that case no question respecting a municipal ordinance was involved. The accident in that case, however, occurred at a street crossing where the rights of the plaintiff and the street railway company were equal and where it was the duty of the motorman to have his car under control. The car which struck the plaintiff in that case was going " fast " past the standing car from which the plaintiff had alighted and over the street crossing; just how fast does not appear except that plaintiff testified that it came " like a bullet," from which we may assume that it was moving at

least as fast as the one in this case. The court in that case held that the rule applied in the *Reed* case was applicable, and I think the reasoning of the prevailing opinion applied to the present case requires us to hold that the plaintiff here was guilty of contributory negligence as matter of law, unless there was here a violation of the municipal ordinance and such violation was alone sufficient to excuse plaintiff from exercising the degree of care which, according to those cases, it was his duty to exercise.

On that subject plaintiff's counsel relies principally upon the case of *Provoost* v. *International R. Co.* (151 App. Div. 240; affd., 208 N. Y. 611) where a car was run at a rate of thirty miles per hour past a standing car at a street intersection discharging passengers, without any signal, and this court reversed the judgment, based upon a nonsuit, and directed a new trial, holding that the question of plaintiff's contributory negligence under the peculiar circumstances of that case was one of fact for the jury, especially in view of the Buffalo city ordinance which was concededly violated in that case, which was at that time in the following form: " No driver or other person having the charge and control of any street railway car within the city of Buffalo shall permit or allow such car to pass any other car at any crossing for the discharge or reception of passengers until such standing car shall have started on its course and cleared at least twenty feet." The plaintiff's intestate in that case was killed by the approaching car and it appeared that he was pushed along a distance of 170 feet before the car was stopped. The rule is well settled in death cases that less evidence is required to excuse the deceased from the charge of contributory negligence. In view of this rule and the difficulty the deceased was under in attempting to protect himself against a car operated at such dangerous and excessive speed, I think the rule of that case is not controlling here.

Moreover, I do not think the evidence here sufficient to support a finding that the amended ordinance was violated. It did not require the approaching car to stop, but simply to reduce its speed to five miles per hour while approaching and passing a standing car. The car did not, in fact, pass a standing car and the trial court ruled that there was no violation of

that part of the ordinance.  He, however, left it to the jury
to say whether it approached the car. while it was standing,
for a reasonable distance back, at more than five miles per
hour.  The place of the accident was a car length north of
the north crosswalk of the cross street.  For all that appears
in the testimony, the car may have approached and crossed
Mohawk street strictly in accordance with the ordinance at
not exceeding a rate of five miles per hour, and as it reached
the north crosswalk its speed may have been increased before
the car struck the plaintiff so that the ordinance was not
violated.  Any finding to the contrary must be based upon
speculation and not upon facts proved at the trial.  Plaintiff
did not pretend to give the rate of speed and his witness
Schalberg saw the car only from just as it struck plaintiff
until its rear truck stopped ten or fifteen feet beyond the
place where plaintiff was struck.  His estimate of a speed
of fifteen to twenty miles per hour based upon such an obser-
vation can have little or no probative value, but there is
entire lack of evidence that the car could not have attained
such a speed after slowing down at the street crossing to
five miles per hour.

Plaintiff also relies upon the case of *Craven* v. *International
R. Co.* (100 App. Div. 157).  In that case the ordinance
referred to in the *Provoost* case was in force and it was violated.
There was also the additional circumstance that the plaintiff
in that case was invited by the conductor to alight from her
car for the purpose of transferring to another of defendant's
cars upon the cross street and it was necessary for her to pass
in the rear of the car from which she alighted and cross the
parallel track in order to. make the transfer to a car then
standing at the corner of the cross street to receive passengers.
It was held that these circumstances and the fact that she
had already looked twice before stepping upon the next track
rendered it proper to submit the question of her contributory
negligence to the jury.  That case was decided in January,
1905, the same month in which the Court of Appeals made its
decision in the *Reed* case, and, as we may assume, before that
decision was made public, as it is not referred to in the opinion.

Plaintiff also relies upon the cases of *Monck* v. *Brooklyn
Heights R. R. Co.* (97 App. Div. 447; affd., 182 N. Y. 567);

*Cohen* v. *Metropolitan St. R. Co.* (63 App. Div. 165; affd., 170 N. Y. 588); *Beers* v. *Metropolitan St. R. Co.* (88 App. Div. 9); *Lovas* v. *International R. Co.* (173 id. 1003; affd., 223 N. Y. 627); *Propster* v. *International R. Co.* (180 App. Div. 917).

The cases are all distinguishable from the present case in the following particulars:

The *Monck* case was a death case. The decision was put upon the ground that the car was so far away that deceased, had he seen it, would or might have been justified in assuming he could cross in safety. Both appellate courts were, however, divided in opinion.

In the *Cohen* case plaintiff saw the approaching car which was fifty feet away and believed he could cross in front of it in safety and would have done so had the car been under control at the street crossing.

In the *Beers* case also defendant failed to have its car under control on a street crossing, and it was held that the question of plaintiff's contributory negligence was properly left to the jury, though, as the opinion says, this conclusion was reached not without doubt. The judgment in defendant's favor was, however, reversed for errors in the charge.

In the *Lovas* case we affirmed a judgment for the plaintiff, with one dissent, where plaintiff's intestate, who was killed in the accident, was struck at the intersection of Main and High streets in Buffalo while riding a bicycle. The trial court charged the jury that there could be no recovery if plaintiff's intestate passed behind the standing car and was struck by the car on the other track. It was plaintiff's contention that intestate passed in front of the standing car, and the jury must have so found. The question in this court was whether such a finding was against the weight of evidence.

In the *Propster* case we affirmed a judgment in plaintiff's favor. There the colliding car was running at fifteen to twenty miles per hour, as the jury could have found, without obeying a " slow " sign, which it passed at full speed one hundred and twenty feet from the regular stopping place. Plaintiff had seen the approaching car through the front window of the car from which he alighted just before he left that car and it was then three hundred feet away. The car

from which he alighted stopped ten or twelve feet from the " slow " sign. He passed behind that car onto the next track, where he was struck about four feet back of it and was listening for the bell and looked as soon as he got clear enough of the car to see by it, and just as he looked he was struck. It was considered that plaintiff had a right to rely to some extent upon the motorman obeying the " slow " sign, and that a question of fact was presented as to whether, under all the circumstances, plaintiff was excusable from the charge of contributory negligence.

In view of these distinguishing circumstances, I think none of these cases upon which plaintiff relies support his position. I think plaintiff failed to use a reasonable degree of care for his own safety and should be held to have been negligent as matter of law, and for that reason the trial court should have granted defendant's motion for a direction of a verdict in its favor. The judgment should be reversed and the complaint dismissed, with costs.

All concurred, except KRUSE, P. J., and HUBBS, J., who dissented and voted for affirmance.

KRUSE, P. J. (dissenting):

After the plaintiff and his companion had alighted from the car they went behind the car, stood there, looked and listened for a car on the adjoining track, but they did not see or hear any. Just where they stood does not appear, but it may be inferred that they stood between the rails of the south-bound track upon which the car from which they had just alighted was then thirty or forty feet away proceeding upon its journey. After looking and listening, no car being within their sight or hearing, they proceeded toward the adjoining north-bound track with the intention of going to the east side of the street on the way to their work.

The two men were nearly side by side, the plaintiff being a step or two in advance of his companion. They took about three or four steps, when the plaintiff, who had reached some point between the rails of the north-bound track, was struck by a car coming from the south. The evidence tends to show that the car came without sounding the bell or giving any other signal of its approach, going at least fifteen or twenty

miles an hour, and was running in disregard of the ordinance of the city, which required it, in approaching and passing a standing street car for the discharge or reception of passengers, to sound the gong and reduce the speed of the car to a rate not to exceed five miles an hour. The head of the standing car, from which the plaintiff had alighted, was at the north crosswalk of the intersecting street, so that the approaching car from the opposite direction had to pass over the intersecting street and run a car length before striking the plaintiff.

Neither the conductor, the motorman of the car, nor any other witness was called on behalf of defendant to explain the accident. The defendant was content to stand upon the evidence given by the plaintiff and his companion. Neither of these men is very clear as to how far he could see when he looked for the car; they put in at thirty or thirty-five feet. One of them thinks he could probably see across the intersecting street.

I think it should not be held as a matter of law that the plaintiff was guilty of contributory negligence in proceeding without looking again. Probably the car from which they had alighted happened to be in such a position as to obstruct their view of the approaching car which struck the plaintiff at the time they looked.

I have no doubt that decisions of the appellate courts may be found to sustain either side of this question. Probably the strongest case in our own department to sustain the contention of the defendant that the plaintiff was guilty of contributory negligence is *Maynard* v. *Rochester ·R. Co.* (136 App. Div. 212), while *Provoost* v. *International R. Co.* (151 id. 240) sustains, as I think, the contention that the question of contributory negligence was one of fact. As between the two cases I prefer to follow the later decision, which was affirmed in the Court of Appeals. (208 N. Y. 611.)

As is pointed out in the opinion in the *Provoost* case, this court did not decide in the *Maynard* case that the plaintiff was guilty of contributory negligence as a matter of law, but the evidence was so unsatisfactory that this court thought it better to send the case back for a new trial. I can see no distinction in principle between the case in hand and the *Provoost* case. It is true that the ordinance in the *Provoost*

case required the car to stop. But in that case, if the injured person had looked the second time the instant before stepping in the course of the car, he would have seen that it had not stopped and that it would hit him if he proceeded.. So in this case, if the plaintiff had looked again just before he stepped over the first rail of the second track, he would have seen that the car was coming, but having looked once, at a time when he could reasonably assume that there was no danger, I think he should not be charged with contributory negligence as a matter of law.

A person alighting from a car in the street cannot give his entire attention and constantly look in one direction. There may be other vehicles and dangers as well as street cars, and he is required to be attentive as to all such dangers, and besides to watch his steps, especially upon an occasion like this where the street was slippery.

I think the learned trial judge very clearly presented the precise questions to the jury for their determination and their verdict has been approved by him. I think it should stand and the judgment and order be affirmed, with costs.

HUBBS, J., concurred.

Judgment and order reversed, with costs, and this court having determined that the trial court should have granted the defendant's motion for the direction of a verdict, the complaint is dismissed, with costs.